# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### FEBRUARY 1999 SESSION



**FILED**

**May 21, 1999**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 01C01-9804-CR-00184 |
| | ) | |
| vs. | ) | Sumner County |
| | ) | |
| **MASON THOMAS WILBANKS** | ) | Hon. Jane Wheatcraft, Judge |
| **and STEVE A. WILLIAMS,** | ) | |
| | ) | (Burglary, Aggravated Burglary, |
| Appellants. | ) | Vandalism, Theft) |
| | ) | |

FOR APPELLANT WILBANKS:
**WALTER H. STUBBS**
Attorney at Law
554 W. Main St.
Gallatin, TN  37066

FOR APPELLANT WILLIAMS:
**CHERYL J. SKIDMORE**
Attorney at Law
130 S. Water Ave.
Gallatin, TN  37066

FOR THE APPELLEE:
**JOHN KNOX WALKUP**
Attorney General & Reporter

**KIM R. HELPER**
Assistant Attorney General
425 Fifth Ave. N., 2d Floor
Nashville, TN  37243-0493

**LAWRENCE RAY WHITLEY**
District Attorney General

**WAYNE HYATT**
Asst. District Attorney General
113 W. Main St., 3d Floor
Gallatin, TN  37066-2803

OPINION FILED:_____

**AFFIRMED IN PART, REVERSED IN PART, REMANDED**

**JAMES CURWOOD WITT, JR., JUDGE**

## OPINION

The defendants, Mason Thomas Wilbanks and Steve A. Williams, appeal from the sentences imposed by the Sumner County Criminal Court for their two-week crime spree in the summer of 1997. Wilbanks is presently serving an effective ten-year sentence in the Department of Correction; Williams is serving his effective twelve-year sentence. In this direct appeal, both defendants challenge the manner of service of their sentences, the imposition of consecutive sentencing, and the restitution order. Wilbanks challenges the length of his sentences. Following a review of the record, the briefs of the parties, and the law, we affirm the sentences as imposed except on the issue of restitution. On the restitution issue, we reverse the trial court's order as to both defendants and remand for further consideration consistent with this opinion.

On June 16, 1997, Defendant Williams burglarized Beefy's restaurant and stole less than $500. Defendant Wilbanks is a former employee of Beefy's, and he drew Williams a map of the restaurant to facilitate his commission of the crime.

On June 22, 1997, Wilbanks and Williams burglarized the home of the Charles Booth family and stole more than $1,000 worth of personal property. Williams and Wilbanks were familiar with the Booth home due to their friendship with one of the Booth children. About four months before the crime, Williams was a guest in the Booth residence for about three weeks when he had nowhere else to live.

On June 24, 1997, the defendants vandalized vending machines in a Hendersonville city park and stole money from the machine.

On June 26, 1997, Williams burglarized the home of Atwell Hill and

Beth Hill while the family was asleep in the home.  He stole less than $500 in cash and personal property.

On June 28, 1997, the defendants were sleeping in a field when it began to rain.  They broke into nearby Knox Doss Middle School, where they stole money and food.  They also committed significant acts of vandalism.

On July 1, 1997, the defendants along with Michael David Hutchinson and Daniel Allen Pulaski burglarized Beech High School.  They stole thousands of dollars worth of property, including tools, electronic equipment, computers, a van, a Saturn vehicle and money.  They also disgraced the facilities with extensive vandalism, which included such senseless acts as urinating on an administrator's chair, spray painting the football team's uniforms, throwing copy machines and computer monitors into the floor, tearing an administrator's college diploma in two, opening and turning over file cabinets, bashing a new automobile's body and windows with a baseball bat, breaking window panes on interior doors, and ransacking offices.  The four young men who broke into the school had an agreement with a fifth individual, Leonard Eugene "Joey" Rowe, to steal computer equipment from the school, which Rowe would then sell.  The four burglars and Rowe ultimately split the proceeds from the sale.

Wilbanks, Williams and the others admitted their involvement in the Beech High School incident.  Wilbanks and Williams admitted their involvement in the earlier crimes.  For the Beefy's incident, Williams pleaded guilty to burglary, a Class D felony.[1]  For the break-in at the Booth residence, Wilbanks and Williams

---

[1]Tenn. Code Ann. § 39-14-402 (1997).

3

both pleaded guilty to aggravated burglary, a Class C felony.[2]  For the vending machine incident, Wilbanks and Williams pleaded guilty to Class D vandalism.[3]  For the break-in at the Hill residence, Williams pleaded guilty to aggravated burglary, a Class C felony.  For the Knox Doss Middle School incident, Wilbanks and Williams pleaded guilty to Class D burglary and Class D vandalism.  For the Beech High School incident Wilbanks and Williams both pleaded guilty to Class C theft of property[4] and Class C vandalism.[5]

Wilbanks entered his pleas without any agreement on sentencing. Williams' pleas included an agreement that he would serve two concurrent six-year sentences for the Beech High School convictions.  His plea agreement further specified that he would serve two four-year sentences for the Booth and Hill aggravated burglaries concurrently to each other and consecutively to the six-year sentences.  Finally, he agreed to four concurrent two-year sentences for the Beefy's burglary, vending machine vandalism, and Knox Doss burglary and vandalism, with the trial court to determine whether these sentences would be served consecutively or concurrently to the others.  The plea agreement did not include the manner of service of Williams' sentences.

A consolidated sentencing hearing was held for all five of the Beech High School defendants.[6]  The proof included testimony from officials from Beech High School, Knox Doss Middle School and Sumner County government regarding

---

[2]Tenn. Code Ann. § 39-14-403 (1997).

[3]Tenn. Code Ann. §§ 39-14-408; 39-14-105 (1997).

[4]Tenn. Code Ann. §§ 39-14-103; 39-14-105 (1997).

[5]Tenn. Code Ann. §§ 39-14-408; 39-14-105 (1997).

[6]Wilbanks and Williams' sentences for the other crimes were included in the hearing.

4

the extent of the devastation to the two schools, the financial repercussions, the effect on student morale, the lost educational opportunities, and the need to "send a message" to others to deter others from similar activity. Members of the Hill and Booth families testified about the property taken from their homes. Booth recalled that both Wilbanks and Williams had been household guests of his son prior to the break-in at his home. A Hendersonville city employee testified about the damage to and loss from the park vending machines. In addition, the court received several exhibits, including presentence reports, letters from individuals who were unable to attend,[7] and statements of loss from various victims.

The presentence report for Defendant Wilbanks reflects an individual who committed his crimes at age 19, following a history of several serious juvenile offenses and attempts at juvenile rehabilitation. Wilbanks has a high school diploma from Beech High School. He has a history of drug use and underage alcohol consumption. He listed only one previous job, which he abandoned after working for less than two weeks.

The presentence report for Defendant Williams reflects a 19-year-old individual at the time of the crimes. Williams has two prior convictions for traffic offenses. He is a graduate of Beech High School and has taken some college courses at a community college. He has a history of underage alcohol consumption and drug use. His work history is abysmal; he has been fired from his last three civilian jobs and was released from the Navy. He has never lasted more than three months in any one job.

After hearing the evidence, the trial court found Defendant Wilbanks

---

[7]These letters were received with the consent of the state.

deserving of maximum six-year sentences for each of his three Class C felonies and maximum four-year sentences for each of his three Class D felonies. The court ordered the six-year sentences to be served concurrently to each other, and the four-year sentences to be served concurrently to each other. The six-year sentences were ordered to be served consecutively to the four-year sentences. The court ordered this effective ten-year sentence to be served in the Department of Correction.

The trial court ordered Defendant Williams to serve his four concurrent two-year sentences consecutively to the already agreed ten-year sentence (two concurrent six-year sentences served consecutively to two concurrent four-year sentences). This effective twelve-year sentence was ordered to be served in the Department of Correction.

Two of the Beech High School co-defendants, who are not parties to this appeal, received five-year sentences to be served in the Department of Correction boot camp program followed by probation. The third co-defendant, also not a party to this appeal, received a six-year sentence to be served with 120 days confinement in the county jail with work release followed by Community Corrections.

Against this factual backdrop, Wilbanks and Williams challenge the sentences imposed.

I

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. §40-35-401(d) (1997). This presumption is "conditioned upon the

6

affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." Id. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. Id. If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §40-35-210(a), (b) (1997); Tenn. Code Ann. §40-35-103(5) (1997); State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

### A. Mason Thomas Wilbanks

1.  Length of Sentence

In the case at bar, the trial court inappropriately denied Defendant Wilbanks the benefit of some of the applicable mitigating factors. Moreover, the court was not specific in defining which enhancement and mitigating factors applied

7

to each individual conviction. Thus, our review is *de novo* unaccompanied by the presumption of correctness.

Clearly, Wilbanks was a leader in the commission of the Beech High School crimes. See Tenn. Code Ann. § 40-35-114(2) (1997). There was evidence Wilbanks rented the U-Haul truck used to transport the stolen electronics and computers. According to the testimony of the co-defendants, Wilbanks was a leader in planning the break-in at Beech.

Likewise, there is evidence the property damage to Beech High School, through theft and vandalism, was particularly great. See Tenn. Code Ann. § 40-35-114(6) (1997). The combined damages for the theft and vandalism exceeded $70,000. There was evidence that these losses were particularly devastating to the students and staff of Beech High School in that school pride was diminished, educational opportunities and benefits were lost, and the school has been unable to replace many of the items. Accord State v. Barbara D. Frank, No. 03C01-9209-CR-00303, slip op. at 9 (Tenn. Crim. App., Knoxville, Dec. 22, 1993) (enhancement factor (6) applied because embezzlement theft of $52,000 approached the Class B felony range and losses were particularly damaging to owners of the victim business). But cf. State v. Grissom, 956 S.W.2d 514, 518 (Tenn. Crim. App. 1997) (use of enhancement factor (6) for theft offense may constitute "double enhancement" in some circumstances because class of offense is based upon amount of money stolen, distinguishing Barbara D. Frank). Similarly, the damage to Knox Doss Middle School was particularly great. The principal testified that there was about $7,000 of damage and theft from the incident. Volunteers worked for approximately 50 hours to restore the library after the defendants senselessly overturned the bookshelves. As at Beech High School, offices were ransacked. The principal testified that the students were very angry

8

that their school had been defiled.

Wilbanks abused a position of private trust in his aggravated burglary of the Booth residence.  See Tenn. Code Ann. § 40-35-114(15) (1997).  He was a friend of Charles Booth's son and had been a guest in the Booth home.

Wilbanks committed the Beech and Knox Doss crimes while on school property.  See Tenn. Code Ann. § 40-35-114(17) (1997).

Finally, Wilbanks was adjudicated to have committed delinquent acts as a juvenile that would constitute felonies if committed by an adult.[8]  See Tenn. Code Ann. § 40-35-114(20) (1997).  His juvenile history is shocking.  It includes three adjudications for aggravated burglary, nineteen for burglarizing vehicles, one for theft of a vehicle, and one for burglary.

Turning to the mitigating factors, we agree with the trial court that none of the defendant's crimes caused or threatened serious bodily injury.  See Tenn. Code Ann. § 40-35-113(1) (1997).

The defendant claims we should mitigate his sentence because his youth caused him to lack substantial judgment in committing these offenses.  See Tenn. Code Ann. § 40-35-113(6) (1997). Wilbanks was 19 at the time of his crimes,

---

[8]The defendant argues, "This factor appears to refer to the crime(s) for which the defendant is being sentenced, not the defendant's criminal history." He concedes, however, that if his interpretation is accepted, the history of juvenile adjudications could be considered under enhancement factor (1), prior criminal history. Enhancement factor (20) applies to prior juvenile adjudications. See, e.g., State v. Brent Brown, No. 02C01-9710-CC-00419, slip op. at 5-6 (Tenn. Crim. App., Jackson, Oct. 26, 1998); State v. Joseph W. Ezell, No. 01C01-9612-CC-00505, slip op. at 3-4 (Tenn. Crim. App., Nashville, June 9, 1998).

which were by no means his first. There is no evidence his age caused him to lack substantial judgment.

The defendant also claims his sentence should have been mitigated because he was suffering from a learning disability. See Tenn. Code Ann. § 40-35-113(8) (1997). There is no proof, however, that this learning disability contributed to the commission of the crimes such that it should significantly reduce his culpability.

On the other hand, we agree with Wilbanks that the trial court should have mitigated the defendant's sentences for the Beech crimes because he "assisted the authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons who had committed the offenses." Tenn. Code Ann. § 40-35-113(9) (1997). Detective Richard Corso testified that Wilbanks identified his co-defendants from the Beech incident.

We also believe the trial court should have mitigated Wilbanks' sentence for the Booth break-in because he assisted the authorities in locating the weapons taken from the Booth home. See Tenn. Code Ann. § 40-35-113(10) (1997). To the extent that the defendant argues this factor should apply to the Beech crimes based upon his assistance to the authorities in locating the Beech co-defendants, we believe we have properly accounted for that mitigating evidence under factor (9).

Finally, the defendant argues various mitigating factors should have been applied under the catch-all provision of Code section 40-35-113(13). He claims he was chemically dependent; however, we fail to see that the underage consumption of alcohol and use of illegal drugs should serve to lessen his sentence

10

liability for these offenses. He offered no evidence of a causal connection between his chemical dependency and the offenses. See State v. Mark W. Rawlings, No. 02C01-9612-CR-00475, slip op. at 9 (Tenn. Crim. App., Jackson, Feb. 10, 1998). Moreover, the voluntary use of intoxicants is excluded from this factor. See Tenn. Code Ann. § 40-35-113(8) (1997). He points to his lack of an adult criminal record; however, his adolescence was remarkable for extensive delinquency, and he was only 19 when he committed these crimes. Cf. State v. Matthew C. Welker, No. 01C01-9610-CC-00456, slip op. at 19 (Tenn. Crim. App., Nashville, Apr. 1, 1998). He claims his attainment of a high school diploma through resource classes evidences his potential for rehabilitation; we disagree. There is evidence he was disruptive and a discipline problem in high school, and his extensive involvement with the juvenile justice system followed by the commission of these crimes speaks convincingly to his dim prospects of rehabilitation.

Thus, the following enhancement and mitigating factors apply to each of Wilbanks's crimes.

| Crime | Enhancement | Mitigating |
|---|---|---|
| Beech theft | 2, 6, 17, 20 | 1, 9 |
| Beech vandalism | 2, 6, 17, 20 | 1, 9 |
| Booth aggravated burglary | 15, 20 | 1, 10 |
| vending machine vandalism | 20 | 1 |
| Knox Doss burglary | 6, 17, 20 | 1 |
| Knox Doss vandalism | 6, 17, 20 | 1 |

Taking these factors into account de novo, a maximum sentence is justified for each of the defendant's crimes. The defendant's extensive juvenile record greatly enhances each sentence. When this enhancement factor is combined with the other enhancement factors, they significantly outweigh the slight mitigation of the defendant's lack of actual or threatened serious bodily injury in these property

11

crimes and his assistance to the authorities after apprehension.

2.    Manner of Service

Next, Wilbanks complains that he should have received a more favorable sentencing alternative than incarceration in the Department of Correction. A defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. §40-35-102(6) (1997). Our sentencing law also provides that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation, shall be given first priority regarding sentences involving incarceration." Tenn. Code Ann. §40-35-102(5) (1997). Thus, a defendant who meets the criteria of section 40-35-102(6) is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption. However, the act does not provide that all offenders who meet the criteria are entitled to such relief; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

As a Range I offender, Wilbanks enjoyed the presumption of favorable candidacy for alternative sentencing for his Class C and D felonies. See Tenn. Code Ann. § 40-35-102(6) (1997). Moreover, he was eligible for probation.[9] See Tenn. Code Ann. § 40-35-303(a) (1997). The record in this case, however,

_____

[9]However, he was ineligible once the trial court determined consecutive sentences were appropriate. Upon receiving an effective ten-year sentence, the defendant became probation ineligible. See Tenn. Code Ann. § 40-35-303(a) (1997) (defendant eligible for probation if he receives sentence no greater than eight years in length).

demonstrates that the presumption of favorable candidacy has been soundly rebutted by the defendant's history of repeated anti-social, lawless behavior. Despite receiving the benefit of pre-trial diversion and probation as a juvenile, and ultimately having been committed to the Department of Youth Development as a juvenile, the defendant has continued committing serious offenses. His dubious prospects of rehabilitation militate strongly in favor of an incarcerative sentence. See Tenn. Code Ann. § 40-35-102(5) (1997); see also Tenn. Code Ann. § 40-35-103(1)(C) (1997).

Moreover, the state presented proof via school officials that the Beech students were seriously affected by the loss of equipment and educational opportunities and benefits, that the Beech and Knox Doss students were anxious to see the defendants punished, and that the case was an appropriate one in which to be an example for others who might be inclined to commit similar offenses. We believe this proof is illustrative that "[c]onfinement is necessary to avoid depreciating the seriousness of the offense and that it is particularly suited to provide an effective deterrence to others likely to commit similar offenses."[10] Tenn. Code Ann. § 40-35-

_____

[10]The defendant argues under the authority of State v. Grissom, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997), that the denial of alternative sentencing cannot be sustained because the trial court did not find that the nature of the offense was "especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree" so as to outweigh all other factors favorable to alternative sentencing. Such a finding is necessary when the circumstances of the offense are the *sole* basis for denying alternative sentencing. See, e.g., State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995); State v. Cleavor, 691 S.W.2d 541, 543-44 (Tenn. 1985). In this case, there are several bases for denying alternative sentencing.

The defendant also argues that his sentence is unjustly harsh in comparison with the sentences received by three of his Beech co-defendants, who all received confinement coupled with release. While the Sentencing Reform Act of 1989 seeks to eliminate disparities in sentencing that are unrelated to its purpose, Tenn. Code Ann. § 40-35-103(2) (1997), there is no requirement that co-defendants receive equal sentences. State v. Michael Leon Chambers, No. 01C01-9505-CC-00143, slip op. at 6 (Tenn. Crim. App., Nashville, June 20, 1996), perm. app. denied (Tenn. 1996).

103(1)(B) (1997).

Thus, the state successfully rebutted Wilbanks' presumption of favorable candidacy for alternative sentencing with evidence to the contrary.

3.    Consecutive Sentencing

Wilbanks' final complaint is that the trial court incorrectly imposed consecutive sentences. In general, consecutive sentencing may be imposed in the discretion of the trial court upon a determination that one or more of the following criteria exist:

(1)    The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;

(2)    The defendant is an offender whose record of criminal activity is extensive;

(3)    The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4)    The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5)    The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6)    The defendant is sentenced for an offense committed while on probation; or

(7)    The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b) (1997). In State v. Wilkerson, 905 S.W.2d 933, 937-38 (Tenn. 1995), the supreme court imposed two additional requirements for

14

consecutive sentencing -- the court must find consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct. At this time, it is unsettled whether Wilkerson applies to all seven of the statutory categories for consecutive sentencing or only the "dangerous offender" category. See State v. David Keith Lane, No. 03C01-9607-CC-00259, slip op. at 11 (Tenn. Crim. App., Knoxville, June 18, 1997), perm. app. granted (Tenn. 1998).

In the present case, Wilbanks "is an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(2) (1997). As detailed above, Wilbanks' juvenile record is abominable. See State v. Fredrick Sledge, No. 02C01-9405-CR-00089, slip op. at 53 (Tenn. Crim. App., Jackson, Nov. 24, 1997) (juvenile criminal activity properly considered in determining propriety of consecutive sentencing), perm. app. granted (Tenn. 1999). There is evidence of other uncharged criminal activity, including drug use and underage alcohol consumption, as well as the numerous present offenses, some of which were dismissed as part of the plea bargain. See State v. Jeffrey Lynn Cameron, No. 03C01-9410-CR-00390, slip op. at 10 (Tenn. Crim. App., Knoxville, Apr. 15, 1996) (although there is some question whether juvenile criminal history, standing alone, can justify consecutive sentencing, it may be considered in connection with the defendant's adult offenses).

Turning to the Wilkerson factors, it is apparent that these offenses were indeed serious. The school offenses had repercussions beyond mere property damage or loss. Consecutive sentencing is appropriate considering the severity of the offenses. Finally, this defendant is one who is wise well beyond his years in terms of unlawful behavior. Contrary to Wilbanks' assertion, the record holds little prospect of his successful rehabilitation. His senseless acts of destruction, his theft

15

from a friend's home, the number of offenses involved over a short period of time, and his extensive juvenile history are all strong indications that consecutive sentencing is required to protect the public from further criminal conduct that will all but certainly occur if he is not incarcerated for an extended period.

In sum, we find no error in the sentences imposed on Mason Thomas Wilbanks.

**B. Steve A. Williams**

Because there are deficiencies in the trial court's sentencing findings in that there is no specific statutory basis stated for the imposition of consecutive sentencing, we review Williams' sentences *de novo* without a presumption of correctness.

1.      Manner of Service

Williams complains that the trial court should not have ordered him to serve his sentence in the Department of Correction.

As a Range I, Class C and D felon, Williams began the sentencing process with the presumption of favorable candidacy for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6) (1997). He was not, however, a candidate for probation based upon his agreed sentence of ten years; further, his effective sentence after the imposition of consecutive sentencing was twelve years. See Tenn. Code Ann. § 40-35-303(a) (1997) (defendant sentenced to eight years or less eligible for probation consideration).

Although this defendant has only a record of traffic violations, there is

16

evidence he has used drugs extensively and consumed alcohol even though he is underage. There is also evidence of uncharged criminal activity in that he vandalized his roommate's apartment and shoplifted before beginning the crime spree for which he received these sentences. He chose to commit these crimes rather than humble himself by asking for his family's assistance after he lost his job and left his apartment. This defendant's work history is notable in that he has been fired from several jobs and released from the Navy, never maintaining employment for more than three months. Despite his claim of remorse at the sentencing hearing and his parents' testimony that they will be supportive of him and have witnessed a change in him since his arrest, these egregious facts are cause for concern in evaluating his prospects for successful rehabilitation.

Ultimately, however, we are persuaded that the trial court correctly found that incarceration, rather than alternative sentencing, was appropriate due to the seriousness of these offenses and in order to provide an effective deterrence to others who might commit similar offenses. See Tenn. Code Ann. § 40-35-103(1)(B) (1997). The Knox Doss, Beech, Booth and Hill crimes are particularly serious. The extent of the senseless devastation to Knox Doss and Beech is shocking and outrageous. The defendant's commission of the Booth burglary is particularly reprehensible in that the victims of this crime were a family that had taken him in for a time when he had nowhere else to live. The Hill burglary was both reprehensible and dangerous because it was committed while the family was in the home sleeping. The fact that all of the defendant's crimes were committed in order to support himself, rather than turning to family resources and avoiding illegal activity, further underscores the seriousness of these offenses. With respect to deterrence, there was evidence that these crimes were well-known to the community and that school children were watching to see how the defendants were punished. School officials testified that this was a case in which the sentence could

17

provide deterrence to others likely to commit similar offenses.

Thus, the trial court correctly determined that the state successfully rebutted the presumption of favorable candidacy for alternative sentencing.

2.      Consecutive Sentencing

Next, Williams claims the trial court erred in finding consecutive sentencing appropriate.   However, the record demonstrates that he has an extensive record of criminal activity.   The present offenses are numerous. Additional offenses were dismissed as part of the plea bargain, although it is undisputed that the defendant committed those crimes.  The defendant committed many other uncharged offenses, including daily marijuana use, use of numerous other illicit drugs, underage consumption of alcohol in copious quantities of a pint to a fifth of a gallon daily, shoplifting and vandalizing his roommmate's apartment. Cf. State v. Cummings, 868 S.W.2d 661, 667 (Tenn, Crim. App. 1992) (defendant convicted of eight counts of an eighty count indictment who was without prior record had an extensive record of criminal activity).

## II

In the final issue before us, the defendants challenge the trial court's order regarding restitution.   Specifically, they claim that the exact amounts representing the losses, particularly at the schools, are unclear and that he may have been assessed restitution for some portion of the losses covered by insurance.[11] Wilbanks claims the liability of each defendant for restitution should be "directly proportional to each defendant's degree of responsibility in relation to the total damages."

---

[11]No restitution was ordered for the Beefy's burglary.

18

As part of the sentencing determination, a trial court may order payment of restitution to a victim. Tenn. Code Ann. § 40-35-104(c)(2) (1997). The "victim" is the individual against whom the offense was actually committed, not the individual's insurer. State v. Alford, 970 S.W.2d 944 (Tenn. 1998). The amount of restitution "must be based upon the victim's pecuniary loss and the financial condition and obligations of the defendant[,] and the amount ordered to be paid does not have to equal or mirror the victim's precise pecuniary loss." State v. Smith, 898 S.W.2d 742, 747 (Tenn. Crim. App. 1994) (interpreting requirements for payment of restitution by probationers pursuant to § 40-35-304(d)). The amount must be reasonable. Id. The court may impose restitution liability among co-defendants jointly and severally, with each defendant receiving credit toward the total amount due for the payments made by his co-defendants. See State v. Heather R. Dowdy, No. 02C01-9610-CR-00348, slip op. at 6 (Tenn. Crim. App., Jackson, July 18, 1997); State v. Tonya Lynn Roberts, No. 01C01-9410-CC-00332, slip op. at 3,7 (Tenn. Crim. App., Nashville, Mar. 10, 1995).

To the extent that the defendants find the record confusing as to the actual losses of the victims, the court is in agreement. The county's risk manager testified about several amounts relative to the school crimes, but his testimony is confusing and at odds with some of the documentation submitted with the victim impact statement. The documentation accompanying the victim impact statement indicates partial insurance recovery, although it is not clear to which amounts the recovery applies. This is particularly critical in that one of the five co-defendants who participated in the scheme to sell some of the stolen property from Beech High School was not present at the school and therefore did not participate in the vandalism. Further, some of the figures given appear to overlap in their coverage of losses. There is no indication whether insurance paid for any of the losses resulting from the crimes at the Hill home and the city park, although it is likely that

19

these victims had insurance. With respect to the Booth crimes, restitution of $1,700 per defendant was ordered; however, Mr. Booth testified that all but $200 worth of property was recovered. Furthermore, there is evidence from Williams' presentence report that the Booths were insured for their loss. The trial court's findings regarding restitution are brief, and the court did not sufficiently explain how it arrived at the restitution figures. Moreover, it appears that the court may have divided the total amount due in restitution to the schools among all of the defendants, although the court did not explicitly state it was taking such action.

Because we are unable to tell from the record whether the trial court took into account any insurance recovery in computing the amount of restitution due and because we are unable to review generally the propriety of the court's restitution order due to the absence of specific findings and explanation of the restitution amounts at which the court arrived, a remand is in order. On remand, the trial court shall make appropriate written or oral findings on the record on the pertinent issues such that this court may review the propriety of the restitution amounts imposed in the event any party is dissatisfied with the trial court's judgment.

The judgment of the trial court is affirmed, except the order of restitution is reversed and remanded.

_____
JAMES CURWOOD WITT, JR., JUDGE

CONCUR:

_____
DAVID G. HAYES, JUDGE

_____

JOHN EVERETT WILLIAMS, JUDGE