IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 22, 2005

## STATE OF TENNESSEE v. MONSANTO UNDREZ CANNON

**Appeal from the Circuit Court for Bedford County**
**No. 15402 & 15403      Lee Russell, Judge**

---

**No. M2005-01258-CCA-R3-CD - Filed January 4, 2006**

---

The Defendant pled guilty to and was convicted of misdemeanor casual exchange of marijuana not in excess of one-half ounce, Class E felony possession with intent for resale of not less than one-half ounce nor more than ten pounds of marijuana, and possession of a handgun as a felon, also a Class E felony. The Defendant was sentenced to eleven months and twenty-nine days for his misdemeanor conviction, and three years as a Range II, multiple offender for each felony conviction. The trial court ordered the two felony conviction sentences to be served consecutively, for an effective six year term of incarceration. On appeal, the Defendant challenges his sentence, claiming the court erred by: 1) imposing consecutive sentences, and 2) denying alternative sentencing. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Fannie J. Harris, Nashville, Tennessee, for the appellant, Monsanto Undrez Cannon.

Paul G. Summers, Attorney General and Reporter; Elizabeth Marney, Assistant AttorneyGeneral; Mike McCown, District Attorney General; and Michael D. Randles and Ann Filer, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### FACTS

The Defendant, Monsanto Undrez Cannon, pled guilty to drug and weapon possession offenses following an undercover drug operation conducted in April of 2003 in Shelbyville. The factual basis for the convictions that led to the sentences at issue in this case was presented by the State at the plea acceptance hearing, and is paraphrased as follows. A confidential informant in the

employ of the Seventeenth Judicial District Drug Task Force contacted authorities and stated that he believed he could make a purchase of marijuana from the Defendant. On April 17, 2003, this confidential informant was sent to the Defendant's place of employment, a barber shop in Shelbyville, to make the purchase. The Defendant led the informant to a backroom where the Defendant sold the informant what he claimed was one-half ounce of marijuana for $50. The informant noticed that the duffle bag from which the Defendant retrieved the bag of marijuana appeared to contain several more ounces of marijuana. The informant left and immediately reported to the Drug Task Force agents, who collected the marijuana and a concealed recording devise. The substance purchased by the informant was sent to the crime lab, which verified it was marijuana, but a few grams less than one-half ounce.

The following day, April 18, 2003, members of the Drug Task Force returned to the Defendant's place of business and, in his presence, executed a search warrant. In the course of their search they recovered several more small quantities of marijuana totaling slightly more than one ounce, and a loaded nine millimeter pistol in a drawer adjacent to where the Defendant was standing. The Defendant was advised of his rights and interviewed. The Defendant admitted that he had engaged in the distribution of what he described as "small amounts of marijuana" over the last several months. The State asserted that the Defendant also claimed in this interview that he possessed the handgun for his own protection from other drug dealers.

In December of 2003, a Bedford County grand jury returned two separate indictments against the Defendant. In Indictment number 15,402, the Defendant was charged with one count of sale of not less than one-half ounce nor more than ten pounds of marijuana, and one count of delivery of the same amount of marijuana, both acts occurring on April, 17, 2003. See Tenn. Code Ann. § 39-17-417. Indictment number 15,403 charged the Defendant with possession with intent to sell not less than one-half-ounce nor more than ten pounds of marijuana, and one count of possession with intent to deliver the same amount, both acts occurring on April 18, 2003. See id. The Defendant was further charged with possession of a handgun by a convicted felon. See Tenn. Code Ann. § 39-17-1307.

A plea acceptance hearing was conducted in April of 2004, during which the Defendant pled guilty to an amended charge of misdemeanor casual exchange in Indictment number 15,402,[1] see Tenn. Code Ann. § 39-17-418, and also pled guilty to all three counts as charged in Indictment number 15,403. At the hearing, the Defendant stated that he disagreed with the State's version of the factual basis of the cases only in that he believed he told the Drug Task Force that he had been dealing drugs for a few weeks, not a few months, and he possessed a handgun for protection from robbers, not other drug dealers. The court, after ensuring the Defendant's pleas were knowing and voluntary, accepted the guilty pleas. The court merged the two drug possession charges in

---

[1]The record reveals that count two of Indictment 15,402, delivery of marijuana was dismissed, and count one, sale of marijuana, was reduced to misdemeanor casual exchange because the amount of marijuana sold was under one-half ounce.

Indictment number 15,403 into one, and entered judgments of conviction for casual exchange, possession of marijuana with intent to sell, and possession of a handgun by a felon.

The Defendant submitted "open pleas," whereby he agreed that his sentences for the three convictions would be determined by the court at a subsequent hearing. The Defendant received a sentencing hearing in April of 2004, during which he presented testimony to show how he had begun to turn his life around. The Defendant testified that he was a licensed barber, gainfully employed, and earning between $350 and $400 a week. He had a fiancé, whom he had been dating for three years, and they were considering marriage. The Defendant admitted he had four children with four different women, to none of whom he had been married. He admitted that he was behind in child support, but insisted that he was providing for his children, even those for whom he had no court ordered obligation. The Defendant further stated that he was currently attending church regularly and keeping good company.

The Defendant further admitted that he dealt drugs in the past because it was an easy way to make money, and that he had himself used marijuana, as recently as January of 2004. He also admitted to having a criminal record and having violated the terms of probation and parole in the past. The court, several times during the course of the Defendant's testimony, questioned him regarding whether one of his past felony convictions involved a handgun, and the Defendant's answers were, at best, evasive.

Several character witnesses testified on behalf of the Defendant, including Mr. Robert O'Neal, the owner of a barber shop where the Defendant was currently employed. Mr. O'Neal stated that he first met the Defendant in church and had known him for four years. He concluded that while the Defendant had made mistakes in the past, he was now reformed and could better pay his debt to society by remaining outside of prison as an employed and productive member of the community. Rev. George Acklin, the Defendant's pastor, characterized the Defendant as remorseful and a changed man. He also noted that the Defendant regularly attended Wednesday evening Bible Study. Ms. Helen Cannon, the Defendant's mother, stated that the Defendant had changed for the better in recent months, and Ms. Tamela Haislip, the Defedant's fiance, admitted that while she was unaware of the extent of the Defendant's prior criminal history, she nonetheless was willing to support him in his rehabilitation.

At the conclusion of the sentencing hearing, the court first noted that the Defendant was a Range II, multiple offender, and then found that two enhancement factors applied: number two, the Defendant had a previous history of criminal convictions in addition to those necessary to establish his range, and number nine, the Defendant had previously failed to comply with conditions of a sentence involving release into the community. See Tenn. Code Ann. § 40-35-114(2) and (9) (2003).[2] Accordingly, the court enhanced the Defendant's sentence for the Class E felony

_____

[2]We note that the legislature has recently amended several provisions of the Criminal Sentencing Reform Act of 1989, said changes becoming effective June 7, 2005. However, the Defendant's crimes in this case, as well as his
(continued...)

-3-

convictions from the presumptive two years up to three years, and imposed eleven months and twenty-nine days for the misdemeanor conviction. The Court further found that no mitigation factors were applicable.[3]

Regarding consecutive service, the court found that although the Defendant was entitled to the "presumption" in favor of concurrent sentencing, because he had an "extensive criminal record," consecutive sentencing was warranted. Accordingly, the court ordered that the two felony conviction sentences be served consecutively for an effective six year sentence.[4] As to manner of service, the court stated that the Defendant's lack of potential for rehabilitation and lack of candor on the witness stand factored heavily in its decision to deny alternative sentencing. Accordingly, the Defendant was ordered to serve six years in the custody of the Tennessee Department of Correction. This appeal followed.

## ANALYSIS

On appeal, the Defendant raises two separate issues pertaining to his sentence: 1) the court erred in ordering consecutive service of his two felony conviction sentences; and 2) the court erred in denying alternative sentencing.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the pre-sentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b) (2003); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d) (2003). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all

---

[2](...continued)
sentencing, predate the effective date of these amendments. Therefore, this case is not affected by the 2005 amendments, and the statutes cited in this opinion are those that were in effect at the time the instant crimes were committed.

[3]The Defendant does not allege in this appeal that his sentences were excessive.

[4]The court elected to run the eleven month and twenty-nine day misdemeanor conviction sentence concurrently with the six year felony sentence.

relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W. 2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401(2003) Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

## I. Procedural Issue

We begin our analysis by addressing a procedural issue. This appeal is before this Court pursuant to an order, issued by the trial court, granting a delayed appeal. While not fully explained in the record on appeal, it appears that the Defendant petitioned for and was granted post-conviction relief in the form of a delayed appeal. See Tenn. Code Ann. § 40-30-113. In its appellate brief, the State argues that because the Defendant failed to include in the record on appeal his petition for post-conviction relief, a transcript of the hearing, and a statement as to how he was denied the right to appeal, the appellate record in this appeal is insufficient to permit meaningful review and is "fatal to the defendant's effort to confer jurisdiction on this Court to entertain the appeal."

However, we find that the record before us is adequate for meaningful review of the Defendant's sentences on direct appeal. The trial court's order granting the delayed appeal is in the record. We conclude that we have jurisdiction over the appeal before us in this case and will proceed to address the merits of the claims asserted therein.

## II. Consecutive Sentencing

In his first issue on appeal, the Defendant asserts that the trial court erred in ordering him to serve his two felony sentences consecutively. To support this claim, the Defendant argues that the court failed to make adequate findings demonstrating that he had an extensive criminal record sufficient to support the imposition of consecutive sentences. We disagree.

We begin by noting that it is within the sound discretion of the trial court whether to impose consecutive or concurrent sentences. See State v. James, 688 S.W.2d 463, 465 (Tenn. Crim. App. 1984). A Tennessee court may order consecutive sentences in cases where it finds any of seven statutorily enumerated criteria to be applicable "by a preponderance of the evidence." Tenn. Code Ann. § 40-35-115(b). In addition to these criteria, consecutive sentencing is also subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed," that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and that the defendant's "potential for rehabilitation" be considered. Tenn. Code Ann. § 40-35-103(2), (4) and (5). Additionally, we are

advised that "the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved." Tenn. Code Ann. § 40-35-115 Sentencing Commission Comments.

In the case at hand, the trial court found one consecutive sentencing criteria applied: the Defendant was "an offender whose record of criminal activity is extensive." Tenn. Crim. App. § 40-35-115(b)(2). The court found that the Defendant's extensive criminal history warranted consecutive sentencing. The court explained:

> If you look at his age, he began to be in serious difficulties immediately as an adult at the age of 18. These continued through 1998 and then these most recent matters to which he has entered pleas of guilty. So he has an extensive criminal record through '98, and, therefore, I believe that the presumption has been overcome to this extent.

Based on its findings of fact, the court imposed consecutive sentences.

We conclude that the record contains sufficient evidence of the Defendant's extensive prior criminal history to support the court's imposition of consecutive sentences based on an "extensive" criminal record. See Tenn. Code Ann. § 40-35-115(b)(2). The Defendant's effective sentence of six years is the result of his pattern of continued criminal activity as well as his obvious unwillingness to reform when given rehabilitation opportunities outside of prison. The Defendant was twenty-nine at the time of sentencing. Starting at age eighteen, and continuing up to one month before entering his guilty pleas to the charges at issue in this case, the Defendant had been regularly engaged in illegal activity. The pre-sentence report indicates the Defendant has accumulated six felony convictions and three misdemeanor convictions, including those at issue in this case. While the Defendant argues the trial court erred by considering his current criminal convictions in imposing consecutive sentences, he cites no authority to support this proposition. Contrary to the Defendant's assertion, case law holds that current offenses may indeed be used in determining criminal history for purposes of consecutive sentencing. See State v. Cummings, 868 S.W.2d 661, 667 (Tenn. Crim. App. 1992) (holding that the defendant, who had no criminal record other than his convictions in the case at issue, was an offender whose criminal record was extensive for consecutive sentencing purposes). Accordingly, this issue is without merit.

### III. Manner of Service

In the Defendant's final issue on appeal, he argues that the trial court erred in denying his request for alternative sentencing. In support of this assertion, the Defendant argues that he is entitled to a favorable presumption of eligibility for alternative sentencing, that he has "turned his life around," and that his past failures to follow the conditions for community release were four years ago and he has since changed. We are unpersuaded by the Defendant's arguments.

A defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate

for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (2003). See also State v. Fields, 40 S.W.3d 435, 440 (Tenn. 2001). The following considerations provide guidance regarding what constitutes "evidence to the contrary" which would rebut the presumption of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1); see also State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

Additionally, as stated above, the principles of sentencing also require that the total sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. See Tenn. Code Ann. § 40-35-103(2), (4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. See id. § 40-35-103(5).

In this case, contrary to the Defendant's assertion on appeal, the trial court correctly held that the Defendant did not enjoy a presumption in favor of alternative sentencing because he was a multiple offender. See Tenn. Code Ann. § 40-35-102(6) (2003). Additionally, the court made the following findings:

> The factor that appears to me most significant in this case is the one set out in 40-35-103(5), and that is his potential or lack of potential for rehabilitation, including the risk of committing another crime while on probation.
>
> We see from his record that he has had deferred judgments taken away from him. He's had parole revoked. He's had community corrections revoked. It does not appear from these facts that he has a great deal of potential for rehabilitation. We see a lengthy period of misconduct. It began when he was 18 in 1993 and it's continued almost to the present time, at least through January when he was still using illegal drugs.

The court also noted that it was "concerned by [the Defendant's] lack of candor during his testimony," stating that it did "not believe that [the Defendant] was telling the truth" concerning the details of his past convictions. While acknowledging that the Defendant was able to have "outstanding people come testify for him," the court nonetheless concluded that the Defendant "simply has a tendency to take shortcuts, and he has a pattern with drugs and he has a pattern with weapons that I think suggest a lack of potential for rehabilitation at the present time."

We find sufficient evidence to support the trial court's conclusion that measures less restrictive than confinement have proved unsuccessful for the Defendant in the past, and a sentence of confinement is therefore appropriate. See Tenn. Code Ann. § 40-35-103(1)(C). The Defendant has previously violated the conditions of deferred judgment and several forms of alternative sentencing, including parole and community corrections. The Defendant's record supports the trial court's finding that the Defendant is a poor candidate for an alternative sentence.

The trial court also found the Defendant lacked candor when he addressed the court during the sentencing hearing. This Court has previously held that "our Sentencing Act has framed the basis of individualized alternative sentencing determinations on the potential for rehabilitation of the defendant. In this context, the untruthfulness of the defendant becomes an important consideration for the trial court." State v. Dowdy, 894 S.W.2d 301, 305-06 (Tenn. Crim. App. 1994). Accordingly, it was within the trial court's discretion in this case to evaluate the Defendant's honesty and candor, as well as his propensity for committing drug and weapon violations, when determining the Defendant's prospects for rehabilitation.

In short, we find the Defendant's extensive criminal history, lack of candor, and frequent failure to successfully complete previous forms of alternative sentencing all support the trial court's determination that the Defendant lacked potential for rehabilitation. See Tenn. Code Ann. § 40-35-103(5). Additionally, after considering the Defendant's criminal record as a whole, we conclude that a six year sentence of confinement in this case is consistent with the sentencing principles and supported by relevant facts and circumstances. Accordingly, the trial court did not err in denying the Defendant alternative sentencing. This issue is without merit.

## CONCLUSION
Based on the foregoing reasoning and authorities, we conclude that the trial court did not err in its imposition of consecutive sentencing or in denying an alternative sentence. The judgments of the trial court are affirmed.

_____
DAVID H. WELLES, JUDGE