STATE of Tennessee, Appellee,

v.

Westney C. CUMMINGS, Appellant.

Court of Criminal Appeals of Tennessee, at Nashville.

March 31, 1992.

Robert S. Peters, Swafford, Peters & O'Neal, Winchester, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Christina Norris, Sp. Asst. Atty. Gen., Nashville, Charles "Buck" Ramsey, Former Dist. Atty. Gen., C. Michael Layne, Present Dist. Atty. Gen., G. Nelson Forrester, and Claus Thormaehlen, Asst. Dist. Attys. Gen., Manchester, for appellee.

**OPINION**

SUMMERS, Judge.

The appellant, Westney C. Cummings, was indicted by the Coffee County Grand Jury during its January 1990 session in an eighty-count indictment charging him with violations of T.C.A. § 53–11–402(a)(3). The indictment alleged that the appellant had fraudulently obtained codeine and hydrocodone from several pharmacies from June through December 1989. The appellant ap- plied for pretrial diversion and attached some twenty-four documents which included letters of recommendation, awards, certificates, and other positive background information. The district attorney general denied the pretrial diversion application. The appellant supplemented his application with other attachments, and the district attorney denied him the second time. The trial court denied his petition for a writ of certiorari which alleged that the district attorney had abused his discretion. The trial court did grant an order of reference to the South Central Tennessee Community Corrections Program to determine whether or not the appellant was eligible.

In June 1990 the appellant presented a proposed plea bargain pursuant to Rule 11(e)(1)(C) of the Tennessee Rules of Criminal Procedure. The district attorney general and the appellant had agreed on stipulated facts and a stipulated plea to allow the appellant to plead guilty to all eighty counts. In return for the plea appellant would receive a two-year sentence on each count with the first five counts running consecutively. The remaining seventy-five counts would run concurrently with the first five counts and concurrently with each other. The proposed plea bargain also provided that the appellant would be placed in the community corrections program to serve his sentence.

During the proffered plea, the assistant district attorney general stated to the court that the appellant was an educated man with an excellent record. His problem was that he had a drug addiction, and he stole drug pads from doctors for whom he worked so that he could obtain the fraudulent prescriptions. The prosecutor stated in part as follows:

This man is an educated man working, as you are going to find in the voluminous documents that have been filed with this Court, with an excellent record. The only problem is that he has a drug addiction. He has harmed actually nobody in reality except himself.... The records and the letters of recommendation which have been filed with me, which are many, many, many, are all but great. You are going to be impressed, as I have been impressed.

We feel that, in a case like this, we have ten years hanging over this man's head. Based upon what this Court has said in the past, I suspect that if this man comes before you again in violation of his Community Corrections, you are going to enhance, as the case law says you can—

In addition to the proffered plea, the district attorney general recommended that the appellant pay a fine of $7,500 into the local drug fund. After listening to the prosecutor and defense counsel, the trial court took the proffered plea under advisement.

Ten days later the trial judge in a written order denied the proposed plea bargain. The order is quoted as follows:

Considering the multitude of counts of the indictment returned by the Grand Jury against this defendant, the long course of criminal conduct entered into by him over an extended period of time, the need for deterrence to this defendant and others similarly inclined the Court disapproves the plea bargain agreement entered into between the parties and is of the opinion that this man should serve substantial time with the Tennessee Department of Corrections for his crimes if convicted.

Appellant then filed a motion for reconsideration of the order denying sentencing under the community corrections program. He also requested a hearing to perfect his record. The hearing was held in September 1990, and the appellant called five witnesses including himself to testify. Once again the trial court denied the appellant the opportunity to be sentenced under community corrections.

A new plea was negotiated between the district attorney general and the appellant. In December 1990 appellant entered a plea to counts one through eight designated as Class E felonies with a range of one to two years per count. The remaining of the eighty counts were dismissed. The trial court allowed the appellant during the second plea to incorporate everything that had been a part of the record in the previous proceedings within the final sentencing proceedings. In February 1991 a final sentencing hearing was held, and the appellant filed several mitigating factors. In a written sentencing or-

der of March 1991, the trial judge finalized appellant's sentence. As to the eight counts to which appellant entered a plea, the pertinent part of the written order of the court is as follows:

In the previous plea bargain submission the Court rejected the recommendation of the State regarding Community Corrections ... and is of the present opinion that the defendant should, on his present pleas of guilty, serve a sentence of two years with the Tennessee Department of Corrections on each count of the indictment, counts four, five, six, seven, and eight of the indictment to run concurrent with each other but consecutive to counts one, two and three which shall run consecutive to each other and the sentences for counts three, four, five, six, seven and eight to be suspended at the completion of the service of the sentences imposed in counts one and two for a total of four years incarceration and four years on probation after his release from the Tennessee Department of Corrections.... It is the intention of the Court that the aforesaid suspension of sentences shall be served under the Community Corrections Program if the defendant is eligible upon his release from the sentence to confinement under count one, and random drug screens will be ordered as a condition thereof. The District Attorney General will draw a judgment document accordingly and provide in addition that the defendant will pay a fine of $500 on each count.

From this order the appellant now appeals to this Court. He has assigned three errors for our consideration.

I. WHETHER THE SENTENCE WAS EXCESSIVE CONSIDERING THE PROVISIONS OF T.C.A. § 40–35–103.

II. WHETHER THE IMPOSITION OF CONSECUTIVE SENTENCES WAS PROPER IN ACCORDANCE WITH T.C.A. § 40–35–115.

III. WHETHER THE TRIAL JUDGE PROPERLY DENIED THE APPELLANT ALTERNATIVE SENTENCING UNDER T.C.A. § 40–35–104 OR

UNDER THE TENNESSEE COMMUNITY CORRECTIONS ACT OF 1985.

We find merit as to appellant's third issue, and we reverse and remand.

## THE APPELLANT'S BACKGROUND

The record shows that both sides agree on the pertinent facts of appellant's background. The appellant is a 38 year old respiratory therapist, has a bachelor's degree in science, and is a member of numerous professional organizations. He, his wife, and his two daughters live in Manchester, Tennessee. He has no prior criminal record, and he is gainfully employed as a medical researcher and respiratory therapist.

When appellant received his degree as a respiratory therapy technician, he also received a degree in management. He graduated with honors and had a 4.0 grade point average. He was named by the faculty as an outstanding student for 1978–79. Appellant is also a member of several professional organizations including the American Association for Respiratory Therapy and the National Society of Cardiopulmonary Technologists.

After appellant applied for pretrial diversion and was denied, he also applied for participation in the community corrections program. After the trial court entered an order of reference, he was interviewed by the local community corrections officials. The report which has been made a part of this record contained a summary of appellant's life, his prior record, and recommendations. The report summarized the appellant's medical and psychological history, his history of addiction, and his attempts to deal with his problems. The report concluded that the appellant would not benefit from incarceration and that he did not demonstrate a criminal or anti-social personality. Community corrections was recommended.

At one of the hearings the appellant offered the testimony of a psychologist who specialized in treating addicted individuals. She testified as to her clinical experience with the appellant. She described appellant's medical history during the course of his addiction. She stated that his addiction was a progressive disease, and that his addiction was under control. In addition to the psychologist, appellant's family and friends testified favorably as to appellant's attitude and character. They gave vivid testimony of appellant's addiction and ultimate criminal involvement.

Appellant's statement to the probation officer contains a good summary of his attitude towards the crimes he committed. When his home was searched in December 1989 for drugs, he stated that he had been addicted to pain medication since having knee surgery and was not addicted due to recreational or experimental drug use. He explained as follows:

> I can not begin to tell you how sorry I am for what I have done but the victims have been myself and my family. I never stole from or hurt anyone but myself. This does not excuse my breaking the law in any way but I would like this chance to state the reasons why I feel I could be of much greater service to and for the community and pay my debt by community service and probation. This is my first offense, and I have no previous record.... On the night of December 7, 1989 when confronted by the police I was ... completely candid, cooperative and helpful to the police and this is something that has never been stated for the record.... The large number of counts I was indicted for were ... given to the authorities by myself. They were phoned in prescriptions with names that would not, I believe have been found had I not been honest with the investigators....

The probation report and the record indicate that appellant was candid and cooperative, and his history in the community is filled with charity work and helping others. He has had a good home life. He has been to treatment for drug addiction and holds no animosity towards the police. He has supported his family, and he has been a contributing member to the community. The consequences of his drug addiction as a result of surgery precipitated his breaking the law. He also acknowledges that he probably will never be able to work in clinical research again because of his convictions. These offenses committed during a seven-month peri-

od of time during 1989 are totally out of character for this appellant.

## THE CRIMINAL SENTENCING REFORM ACT OF 1989

The Tennessee Criminal Sentencing Reform Act of 1989 was a part of the comprehensive penal and sentencing reform legislation enacted by our General Assembly as proposed by the Tennessee Sentencing Commission. T.C.A. § 40–35–101 *et seq.* The purpose of the Act was to address the problem of prison overcrowding in Tennessee and at the same time promote justice and consistency in criminal sentencing. Some prosecutors have criticized the Act as too lenient on criminals, and many defense counsel have stated that the Act does not go far enough to promote alternative sentencing. Regardless of whether one is prosecution or defense oriented, this law took effect on November 1, 1989. It is the law in the State of Tennessee.

Some of the principles of the Act are (1) to make sure that each defendant is punished by the imposition of a sentence which is proportional to the seriousness of his offense; (2) to assure fair and consistent treatment of all defendants by eliminating disparity in sentencing and providing a fair sense of predictability of the criminal law and sanctions; and (3) to prevent crime and promote respect for the law. See T.C.A. § 40–35–102. T.C.A. § 40–35–102(5) provides that since "state prison capacities ... are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts of rehabilitation shall be given first priority regarding sentencing involving incarceration...."

When the Act first passed, T.C.A. § 40–35–102(6) provided as follows:

Defendants who do not fall within the parameters of subdivision (5) and receive a sentence of eight (8) years or less are presumed in the absence of evidence to the contrary to possess capabilities for rehabilitative alternative sentencing options in the discretion of the court and these are specifically encouraged.

However, Chapter 980 of the Public Acts of 1990 amended subdivision (6). The amendment, effective April 30, 1990, provides as follows:

A defendant who does not fall within the parameters of subdivision (5) and is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. T.C.A. § 40–35–102(6).

T.C.A. § 40–35–103 addresses the principles which guide trial judges and this Court in the area of sentences involving confinement. The law provides that sentences involving confinement should be based on the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrent to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

See T.C.A. § 40–35–103(1)(A), (B) and (C).

The sentence imposed should be no greater than that deserved for the offense committed, and any inequities in sentencing should be avoided. The sentence imposed should be the least severe measure necessary to achieve the purposes of the Act. A defendant's potential or lack of potential for rehabilitation or treatment should be considered in determining the sentencing alternative or length of a term. Trial judges are encouraged to use alternatives to incarceration that include victim compensation, reparation, or community service. See T.C.A. § 40–35–103(2), (3), (4), (5) and (6). Sentencing alternatives are also authorized in T.C.A. § 40–35–104, and the trial judge is given several combinations and arrangements for alternative sentencing.

Before a trial judge imposes a sentence pursuant to T.C.A. § 40–35–210, the judge must consider mitigating and enhancement

factors in each case. T.C.A. § 40–35–113 lists the statutory mitigating factors, but the final portion of the section provides that the trial judge may also consider "[a]ny other factor consistent with the purposes of this chapter." T.C.A. § 40–35–113(13).

The enhancement factors are set forth in T.C.A. § 40–35–114 to identify those situations which justify a departure from the minimum penalties for each offense. The enhancement factors can be utilized by the trial judge if those factors are "not themselves essential elements of the offense as charged in the indictment." Sixteen enhancement factors are listed under the statute.

T.C.A. § 40–35–210 provides that in determining the specific sentence and the appropriate combination of sentencing alternatives, the trial court shall consider the following: (1) the evidence received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments concerning sentencing alternatives; (4) the characteristics and nature of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancing factors in T.C.A. §§ 40–35–113 and 40–35–114; and (6) any statement the defendant wishes to make in his own behalf about sentencing. The statute provides that the presumptive sentence shall be the minimum sentence in the range if no enhancement or mitigating factors exist. T.C.A. § 40–35–210(c). If enhancement factors exist but there are no mitigating factors, then the trial court may set the sentence above the minimum in that range but still within the range. Should both enhancement and mitigating factors exist, the court must start at the minimum sentence in the range and enhance the sentence within the range as appropriate for the enhancement factors. Then the trial judge will reduce the sentence within the range as a appropriate for the mitigating factors. See T.C.A. § 40–35–210(d) and (e).

T.C.A. § 40–35–115 is our statutory authority regarding multiple convictions to determine whether or not sentences should run consecutively or concurrently. This statute is essentially a codification of *Gray v. State*, 538 S.W.2d 391 (Tenn.1976) and *State v. Tay-*

*lor*, 739 S.W.2d 227 (Tenn.1987). The court may order sentences to run consecutively if it so finds by a preponderance of the evidence that one or more of the statutory criteria exists.

The defendant in a criminal case may appeal from the length, range, or the manner of service of the sentence imposed by the sentencing court. As well, he may also appeal the imposition of consecutive sentences. T.C.A. § 40–35–401. The state may appeal from the length, range or manner of service of the sentence imposed by the sentencing court as well as the imposition of concurrent sentences. T.C.A. § 40–35–402. When reviewing sentences, our Court conducts a *de novo* review on the record of the issues presented; and this review shall be conducted with a presumption that the determinations made by the trial court are correct. T.C.A. § 40–35–401(d). In conducting our *de novo* review, our Court may consider: (a) any evidence received at the trial or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel; (e) the nature and characteristics of the offense; (f) any mitigating or enhancing factors; (g) statements made by the appellant; and (h) the appellant's potential or lack of potential for rehabilitation or treatment.

### I.

Appellant's first issue involves the actual sentence he received on each of the eight counts. He has listed five statutory mitigating factors and the state has presented no enhancement factors. He argues that the trial court should not have sentenced him to the upper end of the range on each count.

We have exercised our *de novo* review of the record as to appellant's sentence. We agree that there are five mitigating circumstances which would apply to his case. These fall under T.C.A. § 40–35–113(1), (2), (3), (8), and (11). We do not agree with appellant's analysis that no enhancement factors exist. The offenses involved more than one victim pursuant to T.C.A. § 40–35–114(3). We also feel that because of appellant's position in the medical field and his relationship to medical professionals and

pharmacists that he abused a private trust and used his special skills in a manner that significantly facilitated the commission of the offenses. See T.C.A. § 40–35–114(15). Although he has no prior criminal convictions on his record, his criminal behavior because of the multiplicity of counts is a factor. See T.C.A. § 40–35–114(1). The state makes no argument in its brief in this or any other sentencing issue because of the district attorney's position below. Nonetheless, we find appellant's issue regarding punishment range to be meritless and, hence, is overruled.

## II.

■ Appellant next contests his consecutive sentencing. In reviewing T.C.A. § 40–35–115 and in exercising our *de novo* review, we find that this appellant fits under subsection (b)(2). Appellant "is an offender whose record of criminal activity is extensive." The trial judge was well within his statutory authority and duty to impose consecutive sentences. It should also be pointed out that he did not run every sentence consecutively; rather, only four of the eight sentences are to run consecutively.

Appellant's second issue is overruled.

## III.

■ Appellant's third issue involves the trial court's decision not to employ alternative sentencing under the Tennessee Community Corrections Act pursuant to T.C.A. § 40–36–101 *et seq.* The trial judge ordered that after the appellant had served four years incarceration with the Tennessee Department of Correction, he would then be placed on probation for four years. The court also ordered that the four years of probation would be served under the Community Corrections Program. The appellant apparently wants all of his sentence to be served in community corrections.

The Tennessee Community Corrections Act of 1985 was passed by the 1st Extraordinary Session of the 1985 General Assembly. The purposes of community corrections was to establish a policy to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration. Because of prison overcrowding, community

corrections was a way to reserve secure confinement facilities for violent felony offenders. As part of the goals of the Community Corrections Act, the General Assembly established efficient community corrections programs; promoted accountability of offenders to their local community; filled gaps in the local correctional system through the development of a range of sanctions and services; reduced the number of nonviolent felony offenders in correctional institutions and jail; and provided "opportunities for offenders demonstrating special needs to receive services which enhance their ability to provide for their families and become contributing members of their community." T.C.A. § 40–36–104. The Community Corrections Act has been misunderstood by many. It is often felt that community corrections, as a vehicle of reducing overcrowding of prisons, is merely a "slap on the wrist for the defendant." Sometimes community corrections is viewed by those who are misinformed as being something even less than probation. Such was not the intent of the General Assembly when it passed the Act, and such does not appear to be reality. In many cases, a good community corrections program is more of a punishment to the offender than actually going to the Department of Correction and being paroled shortly thereafter.

In any event, this appellant feels that he deserves community corrections; and he points out he is presumed to be eligible for alternative sentencing. We agree that although appellant has been convicted of eight counts of crime and was indicted in seventy-two more cases, he does fit the General Assembly's criteria for eligibility for community corrections. Trial judges are encouraged to use alternatives to incarceration under the Criminal Sentencing Reform Act of 1989. Confinement should be necessary to protect society by restraining a defendant with a long history of criminal conduct. It should be used to avoid depreciating the seriousness of the offense. It should be used where less restrictive measures than confinement have frequently been applied unsuccessfully to that particular offender. Although this particular appellant has been

charged in multiple counts and would normally be prison-bound, our legislature has also deemed that he is that paradigmatic type of offender who deserves community corrections.

Before one is entitled to community corrections, he must be eligible pursuant to T.C.A. § 40–36–106(a). The appellant fits the eligibility requirements. In addition, the appellant clearly is someone with "special needs [which are] treatable and could be served best in the community rather than in a correctional institution...." T.C.A. § 40–36–106(c). The appellant has also been recommended for community corrections by the entity which administers the program in his jurisdiction. This comports with *State v. Taylor,* 744 S.W.2d 919 (Tenn.Crim.App. 1987). Mere eligibility, of course, does not end the inquiry.

The case of *State v. Ashby,* 823 S.W.2d 166 (Tenn.1992) appears to be the latest opinion by our Tennessee Supreme Court regarding community corrections. The appellant in that case was convicted of six counts of selling Valium, one count of selling the drug Flexeril, and one count of possessing 750 Valium with intent to sell. He was sentenced by the trial court to two terms of three years in the Department of Correction and fined $750.00 on each of seven counts and thirty days in jail on another count. The Court of Criminal Appeals affirmed his sentences. Our Court applied a presumption of correctness standard and held that deterrence alone is a proper basis for denial of community corrections. Our Supreme Court, in an opinion authored by our Chief Justice, affirmed appellant's convictions but reversed the sentence with an order to the trial court to sentence appellant under the Tennessee Community Corrections Act.

According to *Ashby,* deterrence alone should not be the sole reason to deny a defendant alternative sentencing. The Supreme Court also opined that the courts below did not consider the defendant's potential for rehabilitation or treatment. Although Ashby had a prior conviction for receiving and concealing stolen property, such did not disqualify him for rehabilitation. They further found that his criminal conduct was not of the violent type and that he posed no threat to society. Basically, he was presumptively a candidate for alternative sentencing; and the state had not rebutted that presumption.

In *Ashby* at page 171, our Supreme Court quoted *Moten v. State,* 559 S.W.2d 770, 773 (Tenn.1977) as follows:

It is not the policy or purpose of this Court to place trial judges in a judicial straightjacket in this or any other area, and we are always reluctant to interfere with their traditional discretionary powers. However, ours is the task of affording a meaningful review; and where the effect of sustaining the denial of a probation would be to defeat the public policy of the state by placing it within the power of a trial judge to deny probation on a basis outside statutory criteria, and without valid reasons, we are left with no choice but to intervene and act in furtherance of the legislative intent embraced in the statutes relating to probation.

The Supreme Court, using a probation analogy, cited the reasoning and conclusion in *Moten* to be applicable to *Ashby.*

Taking *Ashby* into consideration, we find that this appellant is an appropriate candidate for community corrections and should have been sentenced to community corrections. We realize this is a close case because of the number of counts involved, and we certainly do not intend to infringe on the trial court's discretion. However, we must follow the dictates of our General Assembly and our Supreme Court. We must also bear in mind that community corrections is oftentimes misunderstood; but it is a valid, appropriate sentence in our system of criminal jurisprudence in Tennessee. We must accept community corrections, and we must enforce the General Assembly's legislation.

In sentencing to community corrections, the trial court still possesses the power to set the duration of the sentence for the offense committed at any period of time within the appropriate sentence range. The court also has the power to revoke the sentence imposed at any time because of the defendant's conduct or to terminate or modify the pro-

gram to which the defendant has been sentenced. The court may then resentence the defendant to any appropriate sentencing alternative, including incarceration. If a defendant, such as the appellant herein, applies for and receives community corrections, he must abide by the rules. In the instant case, these rules should be strictly enforced. If the offender does not abide by the rules, he may very well have wished that he had gone to the Department of Correction to start building his time. He may wish that he had never heard of alternative sentencing or community corrections.

We feel that this appellant meets the eligible criteria of § 40-36-106 and should have been punished accordingly. In accordance with the opinion of *State v. Ashby, supra,* we find appellant's third issue regarding alternative sentencing to be meritorious.

## HOLDING

Appellant's convictions are affirmed. His sentences are reversed. The case is remanded to the trial court for the entry of an order sentencing appellant pursuant to the Tennessee Community Corrections Act of 1985. The trial court may impose such terms and conditions that are consistent with that act and the Tennessee Criminal Sentencing Reform Act of 1989.

JONES and BIRCH, JJ., concur.