# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

Assigned on Briefs December 18, 2007

## STATE OF TENNESSEE v. RANDALL McCLURE

**Direct Appeal from the Circuit Court for Lincoln County**
No. S0700044    Robert Crigler, Judge

---

**No. M2007-01613-CCA-R3-CD - Filed October 16, 2008**

---

Defendant, Randall McClure, pled guilty to one count of the sale of less than .5 grams of cocaine and one count of the delivery of less than .5 grams of cocaine. The convictions were merged. The manner of service of the agreed upon five year sentence was to be determined by the trial court at a sentencing hearing. Defendant requested alternative sentencing and after conducting the sentencing hearing the trial court denied the request and sentenced Defendant to serve the five-year sentence incarcerated. On appeal, Defendant argues the trial court erroneously denied his request for alternative sentencing. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, and J. C. MCLIN, JJ., joined.

Donna Orr Hargrove, District Public Defender; and A. Jackson Dearing, III, Assistant Public Defender, Shelbyville, Tennessee, for the appellant, Randall McClure.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilbur, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; and Hollyn Hewgly, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

### I. Background

At the guilty plea hearing, the State provided a summary of the evidence that would have been presented at trial. The evidence was summarized as follows:

> On February 17, 2005, Agent Billy Osterman and Assistant Director Tim Miller, agents assigned to the 17th Judicial District Drug Task Force, along with Detective Richard Tucker of the Fayetteville Police Department, met with a confidential

informant (CI) at a prearranged location here in Fayetteville, Tennessee, in Lincoln County.

During this meeting the CI agreed to assist them in efforts against individuals selling crack cocaine within the Fayetteville city limits and selling it on the streets.

They searched the CI's person and vehicle to make sure the CI was not in possession of any contraband. The search met with negative results. The CI was issued $60 in confidential funds to use in the purchase of crack cocaine should that occur.

The CI's vehicle was installed with a hidden camera so that the transaction could be caught on videotape if at all possible.

Also the CI was equipped with a recording device for purposes of recording any transaction and monitoring the CI's actions.

On that afternoon, the CI entered the vehicle and presented to the Bottoms area and the West End area of Fayetteville through the observance of these personnel.

. . .

Once within the Bottoms the CI drove around to see if it was possible to purchase crack cocaine.

The CI did make contact with a black male, who was later identified as [Defendant], at the corner of Robinson Street and Belleview Street.

He had propositioned [Defendant] for the crack cocaine and [Defendant] was willing to go get for him the crack cocaine.

The CI, over his recording equipment, which was transmitting, gave a description to the officers who were surveilling this, of [Defendant]. Describing the clothing and the fact that he was riding a bicycle. Two of these officers who were surveilling observed the CI turn left into Belleview Street from Maple Street and they observed [Defendant] riding his bicycle on Belleview Street approaching Maple Street toward the CI's vehicle as it circled around. They next observed the CI's vehicle come to a stop on Belleview Street, watched [Defendant] approach the CI's driver side window, saw an exchange of items between the CI and [Defendant]. The CI then drove away from [Defendant] to Robinson Street . . .

[T]he CI was followed back to the staging location; searched and three pieces of suspected crack cocaine that he had purchased from [Defendant] were removed from him.

At the sentencing hearing, proof was admitted of Defendant's following prior convictions: (1) A Class B felony conviction in 1995 for delivery of cocaine; (2) two misdemeanor convictions, one in 2002 and the other in 2005, for possession of marijuana; (3) three separate convictions for driving on a suspended license, one in 2005 and two in 1998; (4) a 2002 misdemeanor conviction for possession of a Schedule III controlled substance; (5) a misdemeanor theft conviction in 2005; (6) a misdemeanor criminal trespassing conviction in 2005; and (7) a misdemeanor assault conviction in 2006. In addition, the evidence showed that Defendant had his probation for various convictions revoked on four separate occasions, and his parole on the felony offense was revoked twice.

The State called Deputy Billy Ostermann of the Madison County Drug Task Force. Deputy Ostermann described how the Confidential Informant (CI) came to purchase the crack cocaine from Defendant. He testified that the CI was to go to certain neighborhood in an attempt to purchase crack cocaine and that no one called Defendant. He also testified that Defendant approached the CI.

Defendant did not call any witnesses in his behalf, but did present a letter of support to the trial court.

Although the trial court noted that Defendant was a candidate for alternative sentencing, the trial court determined that the presumption was overcome because of Defendant's criminal history. The trial court stated:

> If you look at page 11 of the presentence report, it actually mentions that he attended Spencer Youth Center which the Court is familiar with. Required commitment from juvenile court. The highest grade he completed was 10th grade. The Court can look at social history and does as part of the reason for denying alternative sentencing.

> Also it mentions two parole violations at the top of page 11. Parole revoked 8-8-97. Failure to report and four positive drug screens. And parole revoked 10-21-99. Failure to report and three positive drug screens.

> The Court takes that to be noted as parole violations that those in addition to the evidence of the probation violations the State presented as proof by way of certified copies and as appears in the presentence report.

> It appears Exhibit 3 is a probation violation, I believe. Exhibit 9 is a probation violation. Exhibit 10 is a probation violation. . . . Exhibit 15 is a probation violation. That would be four probation violations in addition to the two parole violations.

> The significance of that is that alternative sentencing has been tried in the past frequently and recently without success. That in and of itself would be a sufficient reason to deny alternative sentencing.

I also find that confinement is needed to avoid depreciating the seriousness of the offense. It is particularly suited to provide an effective deterrent to people likely to commit similar offenses. [H]is potential for rehabilitation is poor, given the number of times he has been on probation in the past.

The trial court then denied alternative sentencing.

## II. Analysis

We note that the legislature has recently amended several provisions of the Sentencing Reform Act of 1989, which became effective June 7, 2005. However, although Defendant was sentenced after the effective date of the amended Act, Defendant's crime in this case occurred prior to June 7, 2005, and there is nothing in the record to indicate that the Defendant did not elect to be sentenced under the provisions of the amended Act by executing a waiver of his ex post facto protections. *See* 2005 Tenn. Pub. Acts ch. 353 § 18. Therefore, this case is not affected by the 2005 amendments, and the statutes cited in this opinion are those that were in effect at the time the instant crimes were committed.

This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. T.C.A. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. T.C.A. § 40-35-401(d) Sentencing Commission Comments. In conducting our review, we are required, pursuant to T.C.A. § 40-35-210 (2003), to consider the following factors in sentencing:

(1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. T.C.A. § 40-35-102(6).

In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid

depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. T.C.A. § 40-35-103(1); see Ashby, 823 S.W.2d at 169.

A court may also consider the mitigating and enhancing factors set forth in T.C.A. §§ 40-35-113 and 114 as they are relevant to the § 40-35-103 considerations. T.C.A. § 40-35-210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. T.C.A. § 40-35-103(5); Boston, 938 S.W.2d at 438.

There is no mathematical equation to be utilized in determining sentencing alternatives. Not only should the sentence fit the offense, but it should fit the offender as well. T.C.A. § 40-35-103(2); State v. Batey, 35 S.W.3d 585, 588-89 (Tenn. Crim. App. 2000). Indeed, individualized punishment is the essence of alternative sentencing. State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). In summary, sentencing must be determined on a case-by-case basis, tailoring each sentence to that particular defendant based upon the facts of that case and the circumstances of that defendant. State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986).

In the instant case, the trial court clearly delineated its reasons for denying alternative sentencing. Following the guidelines set forth in Tennessee Code Annotated section 40-35-103(1), the trial court denied alternative sentencing based on Defendant's past failures on probation and parole, that Defendant's potential for rehabilitation was poor, that confinement was necessary to avoid depreciating the seriousness of the offense, and that confinement was necessary to provide an effective deterrent.

Defendant also argues that the trial court should have placed him on Community Corrections and relies on State v. Cummings, 868 S.W.2d 661 (Tenn. Crim. App. 1992) to support this contention. In Cummings, the defendant was charged with eight counts of fraudulently obtaining a controlled substance. The defendant was denied Community Corrections in the Circuit Court but that decision was reversed by this Court. Cummings, 868 S.W.2d at 669. Cummings and the instant case, however, are distinguishable. Mr. Cummings had no criminal record, and Defendant in the case *sub juce* has a lengthy one. Id. at 662. Mr. Cummings had never been on any other type of alternative sentencing and this Court determined that he was a "paradigmatic type of offender who deserves community corrections." Id. at 668. Defendant's reliance on Cummings is misplaced due to his lengthy criminal history and failures in the past on probation and parole. See State v. Dwight Morton Spence, No. M2006-00133-CCA-R3-CD, 2006 WL 3498141, at *4 (Tenn. Crim. App., at Nashville, Nov. 22, 2006) perm. app. denied (Tenn. Feb. 6, 2007) (Defendant's prior convictions, prior revocation of alternative sentences, extensive history of marijuana use, failure to seek treatment, and the facts of the case supported the denial of alternative sentencing). Accordingly, Defendant is not entitled to relief as to this issue.

**CONCLUSION**

For the foregoing reasons, the judgment of the circuit court is affirmed.

_____
THOMAS T. WOODALL, JUDGE