# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 3, 2009

## STATE OF TENNESSEE v. JOHN PARKER

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-08172-75    James C. Beasley, Jr., Judge**

---

**No. W2007-02702-CCA-R3-CD  - Filed February 5, 2010**

---

The Defendant-Appellant, John Parker, pled guilty in the Criminal Court of Shelby County to four counts of theft of property over $60,000, a Class B felony, and three counts of theft of property over $10,000, a Class C felony.  After a sentencing hearing, Parker received the following sentences: nine years for theft of property over $60,000, ten years for theft of property over $60,000, three years for each theft of property over $10,000, and eight years for the two remaining theft of property over $60,000.  The trial court ordered the nine, ten, and three-year sentences to be served consecutively.  It ordered the eight-year sentence to be served concurrently to the ten-year sentence, for an effective sentence of twenty-two years. On appeal, Parker claims: (1) the trial court erred in enhancing two of Parker's sentences above the presumptive statutory minimum; (2) the trial court erred in imposing consecutive sentencing; (3) the trial court improperly denied alternative sentencing; (4) the trial court should have granted a new sentencing hearing based upon newly discovered evidence; and (5) there was sufficient cumulative error to require a new sentencing hearing.  Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Robert W. Jones, District Public Defender; William Monroe (at trial) and Phyllis Aluko (on appeal), Assistant Public Defenders, Memphis, Tennessee, for the Defendant-Appellant, John Parker.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Pamela D. Fleming, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

In this case, Parker pled guilty and stipulated to the following set of facts:

Mr. Parker served as an executor of the estate of Mr. William D. Bone. Upon his demise, [Mr. Parker] immediately began writing checks to himself and to his law firm on that estate.

The beneficiaries eventually contacted legal counsel locally, a Mr. Pat Arnoult, who investigated it and contacted Mr. Parker, at which time there was a meeting with Mr. Parker.

Mr. Parker provided a bogus accounting. Mr. Arnoult's suspicions were aroused, and he called the law firm to check the money in the escrow account. They had been told that there was some hundred and forty-eight-plus thousand dollars that was available in the trust account for the Bone beneficiaries.

The law firm did check that escrow account and found that it not only did not have the one hundred and forty-eight-plus thousand dollars in it, but it had a negative balance.

A couple of days later, Mr. Parker caused a wire transfer to be transferred from the Merrill trust account, which is the victim on count two, to the Bone beneficiaries to cover the one hundred and forty-eight thousand dollars ($148,000).

Upon investigation into that transfer, it was learned that immediately upon having the meeting with Mr. Arnoult, Mr. Parker began liquidating the assets in the Merrill trust account to the point that he liquidated a hundred and fifty thousand dollars ($150,000) and caused the one hundred and forty-eight thousand dollar ($148,000) transfer to Mr. Arnoult or the Bone beneficiaries.

The very next day, he caused a transfer of some fifty-one-plus thousand dollars to his own checking account that he shared with his wife at the AmCom South bank account that they shared.

Further investigation showed that over a period from 2002 to 2004, Mr. Parker had written checks in the amount over six hundred and sixty thousand dollars ($660,000) to himself from the Merrill trust account and an amount of over three hundred and fifty thousand dollars ($350,000) to his law firm, most of which did not go through the billing but was simply rolled through the general escrow fund which Mr. Parker was in control of.

Upon the revelation of these two accounts and the problems with them, the law firm started a further investigation. Rossie, Luckett, Parker and

Riddler at the time, now merely Rossie, Luckett and Riddler, ascertained that Mr. Parker had, likewise, used their general escrow account that he was in charge of to write various checks for his own personal business, to include some twenty-plus thousand dollars that he wrote to buy a piece of art, payments to his American-Express bill, of which they totaled more than sixty thousand dollars ($60,000) on that.

Mr. Parker was also in charge of an Elizabeth Ann Wright charitable remainder uni-trust, and upon investigation, it was ascertained that he had caused a sum over ten thousand dollars ($10,000) but less than sixty thousand dollars ($60,000) to be swapped for his own benefit and not to the benefit of the trust.

At the sentencing hearing, Parker's former law partner, Richard Rossie, said that Parker was in charge of the firm's general escrow account. Rossie stated that he received a phone call on June 16, 2004, from an attorney, Pat Arnoult, regarding the William Bone estate. Arnoult represented one of the estate's beneficiaries, and he was concerned about accounting information that Parker had provided to the beneficiary. Parker had sent the beneficiary a printout which showed that the account for the Bone estate contained $148,000. Upon investigation, Rossie found that the account contained only $8,000.

Soon thereafter, Rossie met with the firm's other partners, and they searched Parker's office. They discovered that the general escrow account contained only $9,000, when it should have contained over $100,000. Rossie said they also found numerous accounts that were overdrawn, and several accounts that had been hidden in the firm's computer accounting system. The partners discovered that Parker had received fees that were not paid to the firm. Parker had also paid three personal bills from the general escrow account totaling over $35,000. Rossie said that nine months prior to Arnoult's phone call, Parker was censured by the Board of Professional Responsibility for a fee dispute with a past client. Rossie testified that after the censure, Parker was instructed not to serve as a fiduciary for any of the firm's clients.

Another attorney from Parker's firm testified that she examined checks written to the firm from the Bone estate and the Merrill trust. She determined that Parker failed to pay the firm $64,758 from the Bone estate and $165, 964.50 from the Merrill trust. She further stated that Parker was only entitled to $115,361 from these payments.

James Merrill testified that his father established the Merrill trust. Parker was the Merrill's family attorney. After his father passed, Merrill met with Parker to discuss the trust. Parker admitted to taking money from the trust without authorization; however, Parker said he had taken out a life insurance policy to repay the money. Merrill signed documents regarding the life insurance policy based on his father's loyalty to Parker. Later, Merrill received a phone call from Parker's firm. Merrill was told that Parker was no longer

employed there because of questionable accounting practices. Merrill obtained records from Parker's firm, which he gave to new counsel. Merrill said Parker never took out the life insurance policy, and he did not repay the stolen money. Merrill said he was given no explanation for wiring funds from the Merrill trust to the Bone estate. Merrill testified that he never received any billing information from Parker.

Jeffrey Land testified that he was appointed the successor trustee for the Merrill trust. Land stated that when Parker became trustee, the trust was worth 4.3 million dollars. When Land took over as trustee in July of 2004, the trust was worth roughly two million dollars. At the sentencing hearing, Land examined numerous checks drawn on the trust that were made payable to Parker or Parker's firm. These checks totaled over $800,000. Land also testified that Parker sold several of the trust's stocks and mutual funds that were collectively worth around $150,000. Additionally, Land said Parker sent a written request to Northwestern Mutual, which is part of the Merrill trust, for a wire transfer of $200,000. Land testified that around $148,000 from this transfer was wired to the Bone account, with the remainder wired to Parker's personal account.

Parker was also the trustee for the Elizabeth Ann Wright Charitable Trust. A financial planner for the Wright trust, Kevin Johnston, testified that he was contacted by a beneficiary. The beneficiary was informed that Parker was no longer employed at his firm. Upon investigation, Johnston learned that checks of $25,000 and $18,000 had been withdrawn from the Wright trust without the authorization of the beneficiary. Johnston said Parker's firm later reimbursed the Wright trust for $25,000.

Parker's son testified that Parker was a good father who worked hard in taking care of his family. Parker has eight children. Four of his children were adopted after difficult childhoods in Russia and China. Parker's son said his father admitted to stealing money from clients. Parker's son acknowledged that his father was previously censured by the Board of Professional Responsibility.

Parker admitted to stealing from the Merrill trust, the Bone estate, the Wright trust, and his law firm. He said he stole around 1.5 million dollars from the Merrill trust. In the first year working on the Merrill trust, Parker claimed he earned $300,000 in legal fees. He said he stole additional funds because he anticipated working on the trust for ten to fifteen years. Parker admitted to taking $149,000 from the Merrill trust in order to repay money that he stole from the Bone estate. From the record, it is unclear how much Parker stole from the Bone estate; at a minium, Parker admitted to stealing over $148,000. He estimated that he only used $30,000 for legitimate expenses. Parker said he loaned a friend $32,000 from the Bone estate. He also testified that he stole $25,000 from the Wright trust. He admitted that he conned Mrs. Wright into falsifying two sets of tax returns, which resulted in a refund check of $1,264 being sent to Parker's firm. Parker claimed he did not attempt to hide the money he took from his clients' accounts. He admitted that he "abused a position of trust with several clients."

Following the proof at the sentencing hearing, the trial court sentenced Parker as a Range I, standard offender for each of his convictions. For Parker's convictions related to the Merrill trust and the Bone estate, Parker was sentenced to ten and nine years respectively. He received a three-year sentence for his conviction involving the Wright trust. Parker was sentenced to eight years for stealing from his firm. The trial court also ordered three-year sentences for Parker's theft of the Kaplan and Elliot estates, as well as eight years for his theft from the Dai Waters Wilson Charitable Uni-trust.

The trial court ordered the following sentences to be served consecutively: the ten-year sentence for theft of the Merrill trust, the nine-year sentence for theft of the Bone estate, and the three-year sentence for theft of the Wright trust. The remainder of Parker's sentences were ordered to be served concurrently to the consecutive sentences, for an effective twenty-two year sentence.

Parker later filed a motion for a new sentencing hearing. First, Parker argued that under State v. Gomez, 239 S.W.3d 733 (Tenn. 2007), which was decided after Parker's sentencing hearing, his sentencing was the result of unconstitutional judicial fact-finding. Parker also argued that he was entitled to a new sentencing hearing because a State's witness, Richard Rossie, was subsequently accused in a civil proceeding of "having done the same things for which he castigated Mr. Parker on the stand . . ." The trial court denied this motion, finding that Parker's sentencing was constitutional and in compliance with Tennessee's sentencing statutes. The trial court also found that Rossie's civil proceeding did not affect Parker's sentencing.

**ANALYSIS**

**I. Enhanced Sentences**. Parker raises two arguments regarding the enhancement of two of his sentences above the presumptive statutory minimum. First, he claims his Sixth Amendment rights were violated because a jury did not find that enhancement factors were applicable. The State contends the trial court was able to enhance Parker's sentences because he admitted to each of the enhancement factors applied by the trial court. We agree with the State.

Under Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), any facts relied on by the trial court in enhancing the defendant's sentence above the presumptive statutory minimum must be found by a jury, or else admitted to by the defendant. Id. at 303; see also Apprendi v. New Jersey, 530 U.S. 466, 488, 120 S. Ct. 2348, 2361 (2000). Here, Parker challenges the enhanced sentences he received for thefts from the Merrill trust and the Bone estate. The trial court found that the following enhancement factors from Tennessee Code Annotated section 40-35-114 (2002) were met:

(3) The offense involved more than one (1) victim;

(6) The personal injuries inflicted upon, or the amount of damage to property sustained by or taken from, the victim was particularly great;

(14) The defendant abused a position of public or private trust, or used a professional license in a manner that significantly facilitated the commission or the fulfillment of the offense;

During the sentencing hearing, Parker admitted to all three enhancement factors. Regarding factor (3), Parker testified that he dealt with both the creators and beneficiaries of the Merrill trust and the Bone estate. As to factor (14), Parker admitted that he "abused a position of trust with several clients." He also testified that he served as the trustee for the Merrill trust and as the executor for the Bone estate. For factor (7), Parker admitted that he stole 1.5 million dollars from the Merrill trust and at least $148,000 from the Bone estate. These amounts far exceed the minimum amount needed to establish a Class B felony offense. Because Parker admitted to each of these enhancement factors, his rights under the Sixth Amendment were not violated. He is not entitled to relief on this issue.

Parker further claims the trial court erred by applying enhancement factor (7) because the punishment for theft is already increased based upon the amount of money that was taken. Parker contends that the trial court's application of this factor constitutes double enhancement. The State argues that the trial court properly enhanced Parker's sentences.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2002). Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant, not the State, has the burden of showing the impropriety of the sentence. Sentencing Comm'n Comments, T.C.A. § 40-35-401(d) (2002). This means that if the trial court followed the statutory sentencing procedure, made adequate findings of fact that are supported by the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, this court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Here, the record shows that the trial court considered the applicable sentencing principles, as well as the relevant facts and circumstances; therefore, our review of sentencing is de novo with a presumption that the trial court's determinations are correct.

Here, Parker is challenging the enhanced sentences he received for theft from the Merrill trust and the Bone estate. These sentences are governed by the pre-2005 sentencing act. This act required the trial court to begin its determination of the appropriate sentence with a "presumptive sentence." T.C.A. § 40-35-210(c) (2002). For theft of property over $60,000, which is a Class B felony, the range of sentencing was between eight and twelve

years, with the presumptive sentence being eight years. See id.; T.C.A. § 40-35-112(a)(2) (2002). The trial court was permitted to adjust Parker's sentences within the range of sentencing based on the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114. T.C.A. § 40-35-210(c)(2) (2002). Here, the trial court found that three enhancement factors and two mitigating factors were applicable; consequently, it sentenced Parker to ten years for theft from the Merrill trust and nine years for theft from the Bone estate.

Parker argues that the case of State v. Grissom, 956 S.W.2d 514 (Tenn. Crim. App. 1997), supports his claim that the trial court improperly applied enhancement factor (7). In Grissom, this court stated, "Our Court has held that since the punishment for theft is enhanced based upon the amount taken by the accused, use of this enhancement factor constitutes double enhancement in violation of the statute." Id. at 518 (citations omitted). An exception was made, however, to this general rule where the amount of property taken was over four times the $60,000 necessary to qualify as a Class B felony. See State v. Brenda Kay Keefer, No. 03C01-9709-CC-00413, 1999 WL 61615, at *2 (Tenn. Crim. App., at Knoxville, Feb. 10, 1999). Here, Parker admitted to stealing 1.5 million dollars from the Merrill trust, which is more than twenty five times the $60,000 necessary to qualify as a Class B felony. This more than satisfies the exception to the general rule against double enhancement. The trial court did not err in applying this enhancement factor to the theft from the Merrill trust.

In regard to Parker's theft of $148,000 from the Bone estate, we conclude the trial court erred by considering the amount taken because it amounted to double enhancement. Nonetheless, the trial court properly found that two other enhancement factors supported the enhancement of Parker's sentence. The record shows that Parker's theft from the Bone estate involved more than one victim and that he abused a position of private trust as executor of the estate. While the trial court found that two mitigating factors were present, we cannot conclude that it erred in enhancing Parker's sentence one year above the presumptive minimum. Accordingly, Parker is not entitled to relief on this issue.

**II. Consecutive Sentencing**. Parker makes two claims regarding the imposition of consecutive sentencing. First, he argues that under Blakely, a trial court cannot impose consecutive sentences based on enhancement factors not found by a jury. The State asserts that the Tennessee Supreme Court has already rejected this argument in State v. Allen, 259 S.W.3d 671, 689-90 (Tenn. 2008). We agree with the State. Without engaging in a lengthy discussion, in Allen, the Tennessee Supreme Court rejected an identical challenge to the constitutionality of the consecutive sentencing statute and held that the statute did not violate the Sixth Amendment. Id. Accordingly, Parker is not entitled to relief on this issue.

Next, Parker claims the trial court should not have imposed consecutive sentencing based on his extensive record of criminal activity. Before the present criminal proceedings, Parker had no prior criminal record. Parker acknowledges that the criminal activity factor

has been applied where the defendant had no prior record; however, he contends that "the facts and the circumstances of these offenses are not so egregious nor lengthy as to warrant consecutive sentencing." The State declined to address this issue.

Under Tennessee Code Annotated section 40-35-115(b), the trial court can order sentences to run consecutively if it finds by a preponderance of the evidence that one of the listed factors was satisfied. Here, the trial court found that under factor (b)(2), "The defendant is an offender whose record of criminal activity is extensive." The trial court acknowledged that Parker had no prior record; however, the trial court referred to State v. Cummings, 868 S.W.2d 661 (Tenn. Crim. App. 1992), in support of its decision. In Cummings, the defendant had no prior record, but the trial court determined that he had an extensive record of criminal activity based on his eight convictions from the on-going criminal proceeding. Id. at 667.

In this case, the trial court focused on the duration and continuous nature of Parker's criminal activity. It found that "going back as far as 1999, Mr. Parker has been systematically stealing money from clients." The trial court stated:

> [T]he criminal activity by Mr. Parker continued after January of 2003 when he was reprimanded by the Supreme Court of this State for doing the exact same thing. . . . And these funds went for everything, like I said, from credit cards, to vacations, to art work. . . ."
>
> And just the extensive nature of the month, after month, after month, after month, after month of taking this money for his own personal use and personal benefit without any qualms about the well being of his clients or the welfare of his clients, knowing that he had been reprimanded for that same action by the Supreme Court . . . .

The record shows that the trial court considered the applicable sentencing principles, as well as the relevant facts and circumstances; therefore, our review of sentencing is de novo with a presumption that the trial court's determinations are correct. Upon review of the record, the trial court did not err in finding that Parker's record of criminal activity is extensive. Parker pled guilty to seven offenses. Each of these convictions was the result of persistent criminal activity that occurred over a period of years. The indictment for one of the convictions concerns criminal activity beginning in 1994. This case is not comparable, as Parker claims, to State v. Chapman, 724 S.W.2d 378, 381 (Tenn. Crim. App. 1986) (holding that the defendant's three convictions for forgery and three convictions for passing a forged instrument within a month's time did not "indicate criminal activity so extensive and continuing for such a period of time as to warrant consecutive sentencing as a multiple offender."). Parker has failed to show that consecutive sentencing was improper. Therefore, he is not entitled to relief.

**III.** **Alternative Sentencing**. Parker claims the trial court erred by denying alternative sentencing. He acknowledges that he is not presumed to be a favorable candidate under Tennessee Code Annotated section 40-35-102(6) because of his convictions for Class B felonies; however, Parker contends the trial court "erred by refusing to consider alternative sentencing." The State argues that the trial court did consider alternative sentencing, and it properly imposed sentences of total confinement.

In determining whether to deny alternative sentencing and impose a sentence of total confinement, the trial court must consider if:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (1993); see also Ashby, 823 S.W.2d at 169. The trial court should also consider the mitigating and enhancement factors set forth in Tennessee Code Annotated sections 40-35-113 and -114 (1993). T.C.A. § 40-35-210(b)(5) (2002); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Finally, the sentence imposed should be the least severe measure necessary to achieve its purpose. T.C.A. § 40-35-103(4) (1993).

Here, the record shows that the trial court thoroughly considered whether alternative sentencing was appropriate; therefore, our review is de novo with a presumption of correctness. See Ashby, 823 S.W.2d at 169. Under section 40-35-103(1)(B), it found that total confinement was necessary. The trial court stated, "The amount of money stolen in these cases is so great that anything short of a substantial incarceration in my opinion would depreciate [Parker's convictions] beyond measure." The trial court also stressed that confinement was needed to deter other lawyers in positions of trust. It stated, "Lawyers need to be sent a message that if you're going to do this, if you're going to steal and take money from these estates and these trusts, there's going to be consequences for that action." Upon review of the record, and in consideration of the presumption of correctness, we cannot conclude that the trial court erred by denying alternative sentencing. Section 40-35-103(1)(B) was clearly met, as Parker admitted to stealing over 1.5 million dollars from his firm and multiple clients over a period of years. He is not entitled to relief on this issue.

**IV.  Denial of New Sentencing Hearing**.  Parker claims the trial court should have granted a new sentencing hearing based upon newly discovered evidence.  He asserts that after the sentencing hearing, he discovered that Richard Rossie "was currently being sued for the same misdeed that [Rossie] had accused Mr. Parker of committing."  Parker argues that "the outcome of [Rossie's] legal proceedings could have an effect on the credibility of Mr. Rossie's claim that Mr. Parker was responsible for all of the misappropriations of funds concerning the law firm's general escrow account."

The record in this case amounts to  no more than speculation that Rossie was accused of the "same misdeed" as Parker which "could have an effect on the credibility on Parker's case."  We are not persuaded by this statement alone that Parker was entitled to a new sentencing hearing.  First, the sentencing hearing in this case was extensive and lasted over a period of ten days.  At the hearing, Parker testified multiple times that he was solely responsible for his actions.  He also repeatedly admitted to stealing the funds at issue.  The record shows the trial court carefully considered all of the testimony and the proof.  The court stated that it was satisfied that "notwithstanding what Mr. Rossi may have been doing, [] Parker was guilty of stealing the monies that were attributed to him." Under these circumstances, we conclude that the trial court properly denied Parker's request for a new sentencing hearing.  Parker is not entitled to relief on this issue.

**V.  Cumulative Effect of Errors**.  Parker argues that the cumulative effect of the alleged errors violated his right to a fair trial and due process.  Because we have already determined that Parker is not entitled to relief on any of the previous issues, we conclude that there is no cumulative error that affected his right to a fair trial or due process under the United States Constitution or the Tennessee Constitution.

## CONCLUSION

Based upon the foregoing, Parker's judgments of conviction are affirmed.


_____
CAMILLE R. McMULLEN, JUDGE