# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 23, 2013

## STATE OF TENNESSEE v. KYLE RONALD FENCL

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2011-A-8      Steve R. Dozier, Judge**

---

**No. M2012-01265-CCA-R3-CD - Filed August 5, 2013**

---

The appellant, Kyle Ronald Fencl, pled guilty in the Davidson County Criminal Court to one count of theft of property valued less than $500, one count of robbery, seven counts of aggravated robbery, and one count of aggravated assault. The trial court imposed an effective sentence of thirty years in the Tennessee Department of Correction. On appeal, the appellant challenges the trial court's imposition of consecutive sentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Charles Walker, Nashville, Tennessee, for the appellant, Kyle Ronald Fencl.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Rachel Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

At the guilty plea hearing, the State recited the following facts in support of the appellant's guilty pleas:

> [T]he State's proof in count one would have shown that on April 15[th], 2010 at approximately 11:20 in the morning, the [appellant] who was later identified quite sometime after the offense

occurred, entered the One Stop Wireless Solution business located at 207 South Gallatin Pike in Davidson County. He looked at some cell phones, grabbed one of the phones, ran out of the store and entered a black Toyota Corolla with a tag 582 YJN. That incident was captured on video surveillance. The ID unit was called to the scene, lifted prints and one of the prints did show the [appellant] Kyle Fencl was the person who had been in the store and touched the evidence that was examined for latent prints.

On June 25th, 2010, Detective Haney of the police department prepared a photo lineup that contained the [appellant's] photograph. That lineup was shown to Ms. Christine Todd, the business owner. She made an identification on – she made a tentative identification saying it was either person number three or four, but stated that she was leaning towards person number three who is Kyle Fencl.

In count two, the State's proof would be that on August 8, 2010 at approximately 3:00 in the afternoon Vanderbilt graduate [s]tudent Jeremy Catrell reported that he had been robbed and assaulted by two black males when they met him after being contacted about purchasing an iPhone 4 that he had posted on Craig's List. The victim reported that he had posted an ad[] on Craig's List on August 8th, 2010, offering to sell the iPhone for $650. That following day he was sent a text message from 593-3903. The person who sent the text stat[ed that] they [were] interested in purchasing the phone.

A meeting was arranged on Vanderbilt Drive near Light Hall and the Medical Research Building. And at 2:36 that day the victim received a text from the defendants stating that they were close to Vanderbilt. At 2:47 the victim arrived at the meeting location. Two black males in a light blue or silver Saturn were waiting on him. He spoke briefly with the driver and the driver indicated that the passenger was interested in the phone. He walked around to [the] passenger side and began demonstrating the phone to the people in the car. He stated that the passenger then asked to see[] the phone, he handed it to him and leaned in the vehicle to continue showing the passenger how

to use the phone. Approximately 40 seconds later the driver of the car began to speed away while Mr. Catrell was still leaning into the vehicle.

The victim tried to grab the phone, but was struck in the face three to four times by the passenger's fist before he let go and disengaged from the car. The car had driven several yards by that time and Mr. Catrell was injured in the hip area since his upper body was still in the vehicle when it was moving. There are photographs of his injuries.

He was able to describe the suspects as two black males approximately 20 to 30 years old. The driver had what you call a plug-style earring in his ear, short facial hair stretching from sideburns down the jaw line. He stated that the passenger was heavier and darker skinned than the driver. There was video footage of the incident from a distance. It corroborated what Mr. Catrell stated in terms of the meeting taking place and the car driving away.

Just before the Saturn arrived at the scene, there was a white Ford Mustang that dropped off what was later learn[ed] to be this [appellant] who then got into the Saturn just prior to the incident taking place. Some months later when Kyle Fencl was developed as a suspect in this case, he was interviewed and did admit his role in this robbery.

In count three, the State's proof would be that on August 31st, 2010, approximately 7:30 p.m., officers were dispatched to the Taco Bell parking lot at 326 Harding Place on a robbery call. The officer arrived on the scene and spoke with the victim. The victim stated that he met with several individuals in a gray colored car at that location due to a phone being advertised for sale on Craig's List. When the victim spoke with one of the subjects, who is later identified as this [appellant], Kyle Fencl, this [appellant] got out of the car an[d] approached the victim.

The [appellant] grabbed the victim[,] pointed a pistol at him and demanded money. The [appellant] struck the victim in the head with the pistol at that time. He then took $450 from the

victim. The [appellant] reentered the vehicle and fled the scene with the other individual[s] that [were] in the car.

When the case got to a point where suspects were developed, Kyle Fencl and his twin brother Kory Fencl were both suspects in the case. A photographic lineup was presented to the victim in this case with Kyle Fencl photographed and it was shown to the victim and positively identified Kyle Fencl as the person with the gun in that case.

In counts four and five, the State's proof would be that on September 10th, 2010 Ammen Abdulah (phonetic) and his brother Ammed Abdulah (phonetic) made arrang[e]ments to meet with somebody at 891 Old Hickory Boulevard. The meeting was due to the fact that they had received a response to their Craig's List ad[] for selling [an] iPhone. Once the brothers arrived at the location, a black male approached them and asked about the iPhone that they had for sale. As that person was looking at the iPhone, two other males came up and pulled handguns on Ammen Abdulah and Ammed Abdulah. The defendant[s] ran. They robbed the victims[,] taking a wallet that contained money, a debit card and a driver's license in addition to the iPhone that was for sale.

Once the case progressed in terms of the investigation the detectives learned that there were multiple robberies related to Craig's List posting[s] for iPhones at that time Kory Fencl an[d] Kyle Fencl were revealed as suspects. And eventually Kyle Fencl was interviewed and admitted to his role in this particular case. And Antonio Lewis, who is a co-defendant, ple[d] guilty in these counts a couple of weeks ago. He had also admitted his presence there. Kory Fencl has also admitted his involvement in that incident.

In count six, [the] State's proof would have shown that on September 27th, 2010, [at] approximate[ly] 3:00 in the afternoon a Mr. Richard Willis came to North Precinct to file a report. Detective talked to the victim about what had occurred. He stated that – the victim stated that on September 10th, 2010 he had a Macbook computer for sale on Craig's List. The victim

-4-

stated that he met with two individuals at 12th and Pine Streets in Davidson County. While the victim was talking with one of the subjects, another walked up and robbed the victim at gun point. The victim reported $120 in cash was taken. His wallet containing credit and debit cards, a Droid cell phone and a Macbook computer.

The victim had been talking to someone about the incident, learned that there was an article about these Craig's List robberies and based on that, he recognized the person in the article as one who had been involved in the robbery of him. He reported the incident to police and when Kyle Fencl was interviewed about these robberies, he admitted his role in them.

In count[s] seven and eight, the State's proof would have shown that Brandon Baskin received a text message from 766-0149 regarding an iPad he had advertised for sale on Craig's List on September 15th, 2010. The victims Brandon Baskin and Emily Budovoughn had set up a meeting with the person that was interested in the iPad. They went to the Olive Garden location with the purpose of selling the iPad. Mr. Baskin got out of his car with the iPad, which the [appellant] Kyle Fencl and his co-defendant Kory Fencl took prior to any conversation about the iPad. There was a handgun produced at that point in time and a demand for money and cell phone[s] also.

The [appellant], Kyle Fencl, then went into the victim's vehicle and took a second iPad from the female victim along with her cell phone. Ms. Budovoughn commented that the [appellant] at that point in time made a comment about her good looks as he took the iPad from her.

When Detective Dozier identified the phone number involved in this incident as being a phone number used by Kory Fencl, that was in part the reason that these Craig's List robberies came to involve suspects of Kory Fencl and Kyle Fencl. Ms. Budovoughn was shown a photographic lineup. She was able to identify the co-defendant Kory Fencl as one of the people involved in this case.

-5-

During interviews both Kory Fencl and Kyle Fencl admitted their involvement in this incident.

In counts nine and ten, that State's proof would have shown that on September 14th, 2010 James Calhoun had posted an ad[] for his laptop being for sale on Craig's List. He received a text message from a male who was interested in purchasing it. They agreed to meet at the victim's residence located at 4461 Katy Road.

When the individuals arrived at the location, Mr. – James Calhoun and his little brother Matthew Calhoun walked to the end of the driveway to meet the individuals. The victim observe[d] a[] gray four-door Saturn occupied by four male blacks at that time. When the vehicle stopped, the rear driver's side door opened and a passenger got out of the car. That person brandished a handgun and demanded the laptop and any other property that the victim possessed. At that time he didn't immediately respond, and the person later identified as Kyle Fencl, then pointed the weapon in the direction of the little brother who was standing by the side of the road. The victim gave his [laptop] and wallet to Kyle Fencl and Mr. Fencl then ran back to the Saturn and the car fled the scene. In this incident, a photographic lineup that contained Kyle Fencl['s] photograph was shown to Mr. Calhoun and there was a positive identification made.

When police initially began solving the Craig's List cases, they first interviewed Kory Fencl who was in custody at the Rutherford County Jail. Kory Fencl admitted to his role in all of these robberies. It was a short time after that that they interviewed this [appellant], Kyle Fencl, and he eventually also admitted his part in all of these robberies. It is in part based on Mr. Fencl's cooperation and his admission in all of these that the State has agreed to cap his exposure as recommended in the plea agreement.

The appellant pled guilty to all of the charged offenses. The plea agreement provided that the sentences for count one (theft), count two (robbery), and count three (aggravated robbery) were to be served concurrently with each other, that the sentences for counts four

through six (aggravated assault) were to be served concurrently with each other, and that the sentences for counts seven through ten (aggravated robbery and aggravated assault) were to be served concurrently with each other. The plea agreement did not establish the length of the sentence for each conviction but did provide that the trial court would determine whether the groups of sentences would be served consecutively to each other.

At the sentencing hearing, the appellant testified that each of the crimes occurred in a nearly identical fashion and that the crimes were his idea. He said that he committed the crimes with his brother, Kory Fencl, or Antonio Lewis. For each incident, he arranged to meet a victim who had advertised on Craig's List. The appellant acknowledged that he threatened the victims with a gun to obtain the advertised devices and/or money. The appellant said he "probably" had bullets at his house, but he never loaded the gun because he "didn't want nobody to get hurt." He committed the crimes to obtain money for cocaine.

The appellant said that only one victim was injured during the crimes, specifically during the crime that occurred at Vanderbilt, and that no weapon was involved in that crime. The appellant said that the victim "tried to grab the merchandise back and I hit him." The appellant stated that he was eighteen years old when he was arrested. After his arrest, the appellant admitted his involvement in the offenses.

The appellant acknowledged that he had three juvenile adjudications for aggravated robbery. He explained that he was in middle school when the aggravated robberies occurred. He said that he, a friend, the friend's brother, and the friend's sister were outside, playing with fake guns. The friend's mother came outside and called police because she did not know the guns were fake. The friend's mother alleged that the appellant stole popsicles from the other children. As a result of the adjudications, the appellant was sent to "Woodland Hills" where he stayed almost a year. Afterward, he lived with his mother and enrolled in East Literature High School. The appellant was expelled from high school after being "suspended several times [for] certain behaviors."

The appellant stated that he was taking responsibility for his actions and apologized to the victims. He said that during his time in confinement, he had tried to "better [him]self" for his release into the community. He had obtained a general equivalency diploma (GED), attended narcotics anonymous (NA) and alcoholics anonymous (AA) meetings, and enrolled in an anger management program. The appellant wanted to go to college to earn a degree in "electronical (sic) engineering."

On cross-examination, the appellant said that he had the idea to commit the instant robberies because the person from whom he got drugs wanted "[t]hat type of merchandise." The appellant traded some of the items he stole for powder cocaine and sold the remainder

of the items. At the time of the robberies, he was using cocaine every other day. The appellant acknowledged that he had a 9 millimeter gun in his possession during every crime except the one at Vanderbilt, that his brother always stayed in the car, and that, when Antonio Lewis was involved, Lewis also had a weapon. The appellant said that he obtained the gun from a friend.

The appellant said that he was released from Woodland Hills on August 9, 2007. The following spring, he was adjudicated delinquent for theft of property valued over $1,000 and "evading arrest by motor vehicle." The appellant said that he was driving a stolen car and was stopped by police. He explained that he had not stolen the car but that he knew it was stolen. Thereafter, the appellant was sent to the Natchez Trace Youth Academy, where he stayed from April 2008 to June 2009. When he was released, he began attending Beech High School. He slept in class and was given "psychotropic medicine."

The appellant acknowledged that when he spoke to police, he initially denied knowing Lewis and denied any knowledge of the robberies. He conceded that the police told him "that they already knew [he] did it before [he was] completely forthright and gave them the information that [he] had about those robberies."

The appellant said that he had worked for Dunkin' Donuts for four months in 2009 and that he had never had any other job.

The appellant's mother, Anita Carla Burnett Fencl, testified that the appellant and his co-defendant, Kory Fencl,[1] were twins. Ms. Fencl said that after the appellant was adjudicated delinquent in 2006 for aggravated robbery, he was sent to Woodland Hills for almost two years. Afterward, the appellant returned to live with Ms. Fencl. He had difficulty adapting to "mainstream" school. The principal repeatedly caught the appellant smoking cigarettes. Ms. Fencl contacted the Department of Children's Services (DCS) for help, and she initiated "unruly petitions." Ms. Fencl took the appellant to Centerstone, and the staff recommended that the appellant be given medication. The appellant refused to take the medication. Thereafter, the court placed the appellant in Natchez Trace, where he stayed for almost two years. The appellant was released from Natchez Trace shortly before the instant offenses. The appellant's medication caused him to sleep in classes, and he was belligerent when he was awakened. Ultimately, he was expelled from school.

Ms. Fencl said that the appellant "had low self-esteem so he always f[ound] some friends . . . that w[ere] doing something they didn't have [any] business doing." She said the appellant "became defiant" and got a job at Dunkin' Donuts to make his own money but

---

[1]This individual's name is also spelled "Cory Fencl" in the record.

became frustrated when he was not allowed to work many hours. Subsequently, he started associating with "those kind of people again." The appellant began staying with a friend's grandmother because Ms. Fencl did not want him living with her if he could not abide by her rules.

The parties agreed that the appellant was a Range I, standard offender. The trial court applied enhancement factor (2), that the appellant was a leader in the commission of an offense involving two or more criminal actors, to counts two through ten. Tenn. Code Ann. § 40-35-114(2). The trial court applied enhancement factor (16), that the appellant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult, to all of the offenses. Tenn. Code Ann. § 40-35-114(16). In mitigation, the court found that the appellant "cooperated with the investigation and gave some information about his codefendant." Tenn. Code Ann. § 40-35-113(13). The trial court sentenced the appellant to eleven months and twenty-nine days for the misdemeanor theft conviction, to four years for each conviction of robbery and aggravated assault, and to ten years for each aggravated robbery conviction.

In considering consecutive sentencing, the trial court applied criterion (2), that the appellant was an offender whose record of criminal activity is extensive, and criterion (4), that the appellant was a dangerous offender whose behavior indicates little or no regard for human life and had no hesitation about committing a crime in which the risk to human life is high. Tenn. Code Ann. § 40-35-115(b)(2), (4). The court ordered the sentences for counts one, two, and three to be served concurrently (set one); counts four, five, and six to be served concurrently (set two); and counts seven, eight, nine, and ten to be served concurrently(set three). The court ordered the sentences in set one to be served consecutively to the sentences in set two. In turn, the sentences in set two were ordered to be served consecutively to the sentences in set three, for a total effective sentence of thirty years.

On appeal, the appellant challenges the trial court's imposition of consecutive sentencing.

## II. Analysis

In conducting its sentencing review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for

rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Bise, 380 S.W.3d 682, 697-98 (Tenn. 2012). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

We note that under the 1989 Sentencing Act, appellate review of the length, range, or manner of service of a sentence was de novo with a presumption of correctness. See Bise, 380 S.W.3d at 693; Tenn. Code Ann. § 40-35-401(d). However, in 2005, in response to Blakely v. Washington, 542 U.S. 296 (2004), our legislature passed amendments to the Sentencing Act to ensure that Tennessee's sentencing scheme could withstand Sixth Amendment scrutiny. See State v. Carter, 254 S.W.3d 335, 342-43 (Tenn. 2008). Thereafter, our supreme court revisited the standard of review to be applied to sentencing determinations and held that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" Bise, 380 S.W.3d at 708. Additionally, our supreme court has held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

However, since the 2005 Amendments to the Sentencing Act, our supreme court has not ruled upon the standard of review to be utilized when reviewing a trial court's imposition of consecutive sentencing. See State v. Jeremy J. Edick, No. W2012-01123-CCA-R3-CD, 2013 WL 3130953, at *9 (Tenn. Crim. App. at Jackson, June 13, 2013). As such, this court has been split regarding the proper standard of review when addressing consecutive sentencing. See State v. Colton D. Whitelow, No. W2012-00527-CCA-R3-CD, 2013 WL 3291889, at *2 (Tenn. Crim. App. at Jackson, June 25, 2013). We conclude that regardless of which standard is applicable, the trial court did not err by imposing consecutive sentencing.

Generally, "[w]hether sentences are to be served concurrently or consecutively is a matter addressed to the sound discretion of the trial court." State v. Adams, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997). Tennessee Code Annotated section 40-35-115(b) contains the discretionary criteria for imposing consecutive sentencing. See also State v. Wilkerson, 905 S.W.2d 933, 936 (Tenn. 1995). Because the criteria for determining consecutive sentencing "are stated in the alternative[,] . . . only one [criterion] need exist to support the appropriateness of consecutive sentencing." State v. Mickens, 123 S.W.3d 355, 394 (Tenn. Crim. App. 2003). The trial court may impose consecutive sentencing upon finding the existence of any one of the criteria.

As we stated earlier, the trial court imposed consecutive sentencing based upon criterion (2), that the appellant was an offender whose record of criminal activity is extensive, and criterion (4), that the appellant was a dangerous offender whose behavior indicates little or no regard for human life and had no hesitation about committing a crime in which the risk to human life is high. Tenn. Code Ann. § 40-35-115(b)(2), (4). Regarding the appellant's extensive record of criminal activity, the trial court noted that the appellant "had committed five offenses that would qualify as a felony as a juvenile and committed these ten offenses at the age of eighteen." This court has previously stated that "[c]urrent offenses may be used in determining criminal history for the purposes of consecutive sentencing." State v. Carolyn J. Nobles, No. M2006-00695-CCA-R3-CD, 2007 WL 677861, at *12 (Tenn. Crim. App. at Nashville, Mar. 7, 2007) (citing State v. Cummings, 868 S.W.2d 661, 667 (Tenn. Crim. App. 1992)). We conclude that the trial court did not abuse its discretion in imposing consecutive sentencing on this basis.

Although the appellant challenges the trial court's finding that the appellant was a dangerous offender, a trial court may impose consecutive sentencing after finding any one of the criteria. Therefore, because the trial court did not err in imposing consecutive sentencing upon finding that the appellant had an extensive criminal history, any error in imposing consecutive sentencing upon finding the appellant to be a dangerous offender is harmless. See Tenn. R. App. P. 36(b).

### III.  Conclusion

In sum, we conclude that the trial court did not err by imposing consecutive sentencing. Therefore, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE