IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 12, 2016

## STATE OF TENNESSEE v. CHARVASEA RODSHUN LANCASTER

**Appeal from the Circuit Court for Madison County**
**Nos. 14191, 14193  Donald H. Allen, Judge**
_____

**No. W2015-00936-CCA-R3-CD  -  Filed November 22, 2016**
_____

Defendant, Charvasea Rodshun Lancaster, appeals his sentences in 11 separate convictions under two case numbers.  Defendant entered open guilty pleas in case number 14-191 to one count of burglary and five counts of theft of property in various amounts.  In case number 14-193, Defendant entered open guilty pleas to two counts of theft, two counts of vehicle burglary, and one count of aggravated burglary.  Following a sentencing hearing, the trial court imposed a total effective sentence of ten years in case 14-191 and an effective sentence of 12 years in case 14-193 and ordered the sentences be served consecutively, for a total effective sentence of 22 years.  Defendant contends that the trial court erred by imposing partial consecutive sentencing.  Having reviewed the record and the briefs of the parties, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3, Appeal as of Right; Judgments of the Circuit Court Affirmed

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT H. MONTGOMERY, JR., JJ., joined.

George Morton Googe, District Public Defender; and Gregory D. Gookin, Assistant Public Defender, Jackson, Tennessee (on appeal); and Kortney Simmons, Jackson, Tennessee (at trial), for the appellant, Charvasea Rodshun Lancaster.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; James G. (Jerry) Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts*

The State gave the following factual basis for Defendant's guilty pleas. On October 17, 2013, Defendant entered the residence of Ralph McLeary without his effective consent and with intent to commit theft. Defendant admitted that he entered the carport area of Mr. McLeary's residence on Old Medina Road and took a push mower belonging to Mr. McLeary. Defendant also admitted that on October 16, 2013, he took a riding lawnmower belonging to Christine Tipton. Defendant admitted that on October 15, 2013, he took a 2001 Ford F-150 belonging to James Moore. Defendant admitted to taking a utility trailer from Larry Graves and a Craftsman riding lawnmower from James Gooch on that same day. Defendant admitted to taking a 2012 Honda Civic from Shannon Hutcherson on October 17, 2013. Defendant was driving that vehicle when he was stopped by the police on October 19, 2013.

Defendant's arrest on October 19, 2013, led to the above charges in case 14-191, as well as charges in case 14-193, involving the following offenses. On or about September 6, 2013, Defendant stole a 2011 Dodge Ram truck from Carlton Howard. On or about September 8, 2013, Defendant stole a 2006 Dodge truck and a 2005 Honda ATV that was on a trailer from Wesley Morris. The keys to the Honda ATV were recovered from Defendant's bedroom. On or about September 9, 2013, Defendant and others entered two vehicles belonging to Denver Moore with intent to commit theft of property. Defendant took property from the vehicles. Defendant also entered Mr. Moore's residence with intent to commit theft of property.

*Sentencing hearing*

At the sentencing hearing, a presentence report was admitted into evidence. Defendant was 17 years old at the time of the sentencing hearing.

Lateka Chism, Defendant's sister, testified that Defendant was a "good uncle" to her son. She testified that Defendant was active in church. She testified that Defendant was "a real good person." Ms. Chism testified that she was shocked when she learned about Defendant's crimes.

Felicia Young, Defendant's mother, testified that Defendant was a "great kid." She testified that Defendant "did a whole 360" when they moved and Defendant changed schools. She testified that Defendant began to have behavior problems at school. Ms. Young sought out help for her son through mentors from her church. She testified, "I don't understand what went wrong." Ms. Young testified that she had "[n]o doubt" that

Defendant could be rehabilitated. She testified that Defendant could live with her and she would supervise him if he was released from incarceration. She testified that Defendant "kn[ew] he did wrong and he want[ed] to do right" and that he had been cooperative with the police. On cross-examination, Ms. Young acknowledged that Defendant had a prior criminal history, including charges for possession of marijuana and theft. She also acknowledged that Defendant had tested positive for marijuana use while on supervised probation and that he was ordered to complete a treatment program.

Ms. Young testified that she "tried to be there for [her] son to talk to him and to coach him," but she was a single parent and worked two jobs. She testified that Defendant "did everything he was supposed to when he was with [her], but when [she] was out of his presence[,] that's when things went wrong." Ms. Young was unaware that Defendant admitted in the presentence report to using alcohol and drugs.

Pearlie Davis testified that she had known Defendant for six years. She knew him from church, where he was an usher and sang in the choir. Ms. Davis testified that Defendant was "very" active in church and that "he had a nice personality." Ms. Davis was not aware of Defendant's past criminal behavior.

Charles Lancaster, Defendant's father, testified that he had a close relationship with his son. Mr. Lancaster testified that when he learned about Defendant's criminal history, he "couldn't believe it. I still don't really believe it." He testified that he was disabled and unable to care for his son. He testified that he tried to talk to his son and encourage him, but Defendant would not "open up" to him. Mr. Lancaster asked the trial court to give his son "a second chance at life."

Following the sentencing hearing, the trial court stated that it had considered the evidence presented at the guilty plea hearing and the evidence presented at the sentencing hearing. The court stated that it had considered the principles of sentencing and the arguments of counsel as to sentencing alternatives, as well as mitigating and enhancement factors. Additionally, the court stated that it had considered the statement made by Defendant, which is part of the presentence report, and Defendant's potential for rehabilitation. The trial court found that Defendant had a previous history of criminal behavior in addition to that necessary to establish the appropriate range, that Defendant was a leader in the commission of the offenses involving two or more criminal actors, and that Defendant had failed to comply with the conditions of a sentence involving release into the community. The trial court also found that Defendant's criminal conduct neither caused nor threatened serious bodily injury and that his age was a mitigating factor. The trial court also found that Defendant accepted his responsibility and admitted his guilt in the offenses.

The trial court imposed the maximum sentence for each of the 11 offenses for which Defendant was convicted. The trial court found that Defendant had not demonstrated any potential for rehabilitation. The court found that it was in the interests of society to be protected from Defendant's possible future criminal conduct, "and I find that to be great." The court stated, "there's no question in my mind if he hadn't been caught and apprehended and been found in possession of a lot of this stolen property, he would have been out committing more crimes as a juvenile. Fortunately, it was stopped." The court also found that measures less restrictive than confinement have recently and frequently been applied without success, and the court concluded that Defendant was not a good candidate for alternative sentencing. Finally, the trial court found that partial consecutive sentencing was proper based on Defendant's extensive criminal history.

The trial court imposed the following sentences for each of Defendant's 11 convictions:

| Case 14-191 | Count 1 | Class D felony burglary | 4 years |
| | Count 3 | Class D felony theft of property | 4 years |
| | Count 4 | Class D felony theft of property | 4 years |
| | Count 5 | Class E felony theft of property | 2 years |
| | Count 6 | Class A misdemeanor theft | 11 months, 29 days |
| | Count 8 | Class C felony theft of property | 6 years |
| Case 14-193 | Count 1 | Class C felony theft of property | 6 years |
| | Count 2 | Class C felony theft of property | 6 years |
| | Count 3 | Class E felony auto burglary | 2 years |
| | Count 4 | Class E felony auto burglary | 2 years |
| | Count 6 | Class C felony aggravated burglary | 6 years |

The trial court ordered that Defendant's sentences for Counts 1 and 8 in case 14-191 be served consecutively, and that his sentences for Counts 1 and 6 in case 14-193 be served consecutively. The trial court also ordered that Defendant's effective sentences in both cases be served consecutively to each other, for a total effective sentence of 22 years.

*Analysis*

Defendant contends that the trial court erred by ordering partial consecutive sentencing. The State responds that the trial court's sentencing determinations were proper.

4

A trial court's sentencing decisions are generally reviewed for abuse of discretion, with a presumption of reasonableness granted to within-range sentences that reflect a proper application of the purposes and principles of sentencing. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). Likewise, the "standard of appellate review for consecutive sentencing is abuse of discretion accompanied by a presumption of reasonableness." *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210; *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103.

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. T.C.A. § 40-35-210(e); *Bise*, 380 S.W.3d at 706. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. T.C.A. § 40-35-401(e), Sentencing Comm'n Cmts.

A trial court may order that multiple sentences run consecutively if the court finds by a preponderance of the evidence that the defendant "is an offender whose record of criminal activity is extensive." T.C.A. § 40-35-115(b)(2). Such was the finding of the trial court in this case. "This court has repeatedly 'approved the consideration of a defendant's history of juvenile adjudications in determining whether a defendant has an extensive record of criminal activity for consecutive sentencing purposes.'" *State v. Carlos Campbell*, No. E2014-00697-CCA-R3-CD, 2015 WL 6155893, at *22 (Tenn. Crim. App., at Knoxville, Oct. 20, 2015) (quoting *Lamario Sumner v. State*, No. W2009-00453-CCA-R3-PC, 2010 WL 4544955, at *8 (Tenn. Crim. App., at Jackson, Nov. 10, 2010)), *perm. app. denied* (Tenn., Feb. 16, 2011). A trial court's consideration of the offenses for which a defendant is currently being sentenced is also proper in determining whether a defendant has an extensive criminal history. *State v. Cummings*, 868 S.W.2d 661, 667 (Tenn. Crim. App. 1992).

The presentence report shows that Defendant was adjudicated delinquent in 2011 for possession of marijuana and in 2012 for theft of property, that he had violated aftercare three times, and that he ran away twice, once from his home and once from a court ordered treatment program. Defendant admitted in the presentence report that he had been smoking marijuana since the age of 13, that he had been drinking alcohol since the age of 14, and that he had taken Xanax and ecstasy. Additionally, under *Cummings*, Defendant's eleven convictions for which he was being sentenced in this case were proper for the court's consideration of Defendant's extensive criminal history.

Defendant's criminal history supports the trial court's finding that his record of criminal activity is extensive, and that factor alone justifies the trial court's ordering that he serve some of his sentences consecutively. Defendant is not entitled to relief.

## CONCLUSION

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, PRESIDING JUDGE